## FIELD LINE (CARDIFF), Limited, v. SOUTH ATLANTIC S. S. LINE.

(Circuit Court of Appeals, Fifth Circuit. December 3, 1912.)

No. 2,358.

1. SHIPPING (§ 62*)—CHARTERS—LIABILITY OF OWNER—CONFLICT BETWEEN BILLS OF LADING AND CHARTER PARTY.

Where a charter party which does not effect a demise of the vessel provides that the master shall sign bills of lading when presented without prejudice to the charter party, the owner is bound to a shipper by the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

terms of a bill of lading so signed, although they may be in conflict with those of the charter party.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 257-269, 313-315, 317; Dec. Dig. § 62.*]

2. SHIPPING (§ 62*)—CHARTERS—RIGHTS OF PARTIES.

A charter party provided that the master should sign bills of lading when presented "without prejudice to this charter party." It was further stipulated, "Average (if any) in accordance with the York-Antwerp rules, 1890," and such rules provided that "no jettison of deck cargo shall be made good as general average." The master, however, was required by the charterer to sign bills of lading for certain consignments of lumber containing a provision that such rules should govern, "excepting that jettison of deck cargo (and freight thereon) for the common safety shall be allowable as general average," and did sign the same under protest. A part of the deck cargo covered by such bills of lading was jettisoned, and the shipowner was subjected to loss in general average, and, the other bills of lading containing no such exception, it could not call on the other shippers to contribute. *Held* that, while it was bound by such bills of lading as regarded the shippers, the rights of the parties to the charter were governed by its terms, and that it was entitled to recover its loss from the charterer.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 257-269, 313-315, 317; Dec. Dig. § 62.*]

Appeal from the District Court of the United States for the Southern District of Georgia; Wm. B. Sheppard, Judge.

Suit in admiralty by the Field Line (Cardiff), Limited, against the South Atlantic Steamship Line. Decree for respondent, and libelant appeals. Reversed.

Anton P. Wright and Walter C. Hartridge, both of Savannah, Ga., for appellant.

Samuel B. Adams and A. Pratt Adams, both of Savannah, Ga., for appellee.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

SHELBY, Circuit Judge. Libel by the shipowner against the charterer for an alleged breach of the contract of charter party. The charterer excepted to the libel, the exceptions were sustained, and the libel dismissed. The libelant appeals, and assigns, with specifications, that the District Court erred in sustaining the exceptions and dismissing the libel.

It is shown by the libel that the Field Line (Cardiff), Limited, the appellant, a British corporation, is the owner of the steamship Eastfield. The South Atlantic Steamship Line, the appellee, is a Georgia corporation, engaged in the business of chartering vessels for the transportation of merchandise. On December 3, 1908, the appellant chartered its vessel to the appellee for a voyage from Tampa, Pensacola, or New Orleans to the United Kingdom, or to the continent between Havre and Hamburg. The charter party provided that the captain of the vessel should sign bills of lading, when presented, "without prejudice to this charter party," and that he should report at the office of the charterer, or its agents, at the port of loading

at least twice daily, at times designated by it for signing bills of lading, and it was stipulated as follows:

"Average (if any) in accordance with the York-Antwerp rules, 1890"

—which rules, it is alleged, provide that:

"No jettison of deck cargo shall be made good as general average."

Article 3 of the charter party was to the effect that such goods only as the charterer or its agents may direct shall be received on board any part of the steamer. The bills of lading issued for the cargo were in accordance with the charter party, with the exception of three. These three were issued to the Pensacola Lumber Company for lumber and timber, and contained these words:

"General average payable according to York-Antwerp rules, 1890, excepting that jettison of deck cargo (and freight thereon) for the common safety shall be allowable as general average."

This provision is in direct conflict with the charter party, which, by reference to the York-Antwerp rules, 1890, provided that:

"No jettison of deck cargo shall be made good as general average."

When these three bills were presented to the master of the vessel for his signature, he protested against signing them; but the charterer's agent pointed out to the master that the charter party provided that the bills of lading should be signed "without prejudice to this charter party," and insisted that the master should sign them. The master then signed them. On the voyage which followed, heavy weather was encountered, and, to save the ship, cargo, and life, it became necessary to jettison part of the deck cargo, after which the vessel arrived safely at Rotterdam. The deck cargo, consisting of sawn pine logs, was loaded by the Pensacola Lumber Company, and was included in one of the bills of lading which was in conflict with the charter party, and which was signed by the master after protest. No part of the cargo was jettisoned, except part of the deck load, and because of the fact that the three bills of lading provided for the recovery in general average of deck load jettisoned, the appellant, as owner of the ship, was compelled to proceed with the adjustment of general average at Rotterdam, incurring expenses which are stated in the libel, and was also required to pay for the jettisoned cargo. The payment for the jettisoned cargo was made to underwriters who had been subrogated to the rights of the owners of the cargo. The appellant, as shipowner, could not call on the owners of the cargo not jettisoned for contribution, because their bills of lading were in conformity to the charter party.

There is a prayer for a decree against the charterer, the appellee, for $3,861.95, the aggregate of the sums paid out by the appellant by reason of the facts alleged.

The District Court sustained the exceptions to the libel generally, without reference to any particular ground of exception, and we proceed to consider what we take to be the material questions raised by the controversy.

It appears clearly from the allegations of the libel that the issu-

ance of the bills of lading in conflict with the terms of the charter party subjected the appellant to the loss which it sues to recover.

Two general questions are necessary to be considered in arriving at a conclusion as to whether or not the libel shows a cause of action: First, was the appellant, as owner of the ship, required by the bill of lading to pay for the deck cargo jettisoned? and, second, having paid for it, do the facts alleged show a breach of the charter party by the charterer which makes it liable to the shipowner for the amount so paid?

[1] The charter party provided that the captain should sign the bills of lading when presented to him. There was no demise of the vessel; the master and the crew remained in possession; the owner, by the charter party, only let the vessel for the purpose of carrying a cargo to be furnished or procured by the charterer. There has been much controversy in such cases as to whether the authority of the master to sign the bills of lading is on behalf of the charterer or the owner (Carver's Carriage by Sea [3d Ed.] § 154); but it seems that here this question is not material, if the altered state of the master's authority will not affect the liability of the owner. The charter party permitting the master and crew to remain in control of the vessel, the master continued to be the representative of the shipowner; and the meaning of the stipulation that the master shall sign the bills of lading is that the shipowner shall, through the master, contract with shippers for the charterer's benefit. It would seem to follow that the shipowner in such cases is bound by the bill of lading, although it may in terms differ from the charter party. In Sandeman v. Scurr, 2 Q. B. 86, 97, it is said:

"We think that until the fact that the master's authority has been put an end to is brought to the knowledge of a shipper of goods, the latter has a right to look to the owner as the principal with whom his contract has been made."

The English cases bearing on this question are reviewed by Carver, and he concludes from them that the bill of lading in a case like this is a contract with the shipowner, and that the master should be regarded as having made it on the owner's behalf and not on behalf of the charterer; that the provision in the charter party that the master shall sign bills of lading is not a mere authority to him to do so, but an agreement that he shall do so, for a breach of which the owner is liable. Carver's Carriage by Sea (3d Ed.) §§ 155, 157. In Schooner Freeman, etc., v. Buckingham et al., 18 How. 182, 189 (15 L. Ed. 341), Mr. Justice Curtis makes an observation that indicates that the admiralty law of this country is the same. Speaking for the court, he says:

"We are of opinion that, under our admiralty law, contracts of affreightment, entered into with the master, in good faith, and within the scope of his apparent authority as master, bind the vessel to the merchandise for the performance of such contracts, wholly irrespective of the ownership of the vessel, and whether the master be the agent of the general or the special owner."

In The Alert, 61 Fed. 113, 9 C. C. A. 390, it is held that even where a ship is chartered, so that the charterer is deemed the special owner, the ship is not freed from liability on the contracts of af-

freightment received from the agent of the ship. In Purvis v. Tunno, 1 Brev. (S. C.) 259, 2 Am. Dec. 664, it is held that the master is the agent of the owner, who is liable for his defaults, although the whole vessel is chartered, unless the charterer engage the master and seamen. In Robinson v. Holst & Weber, 96 Ga. 19, it is held that where the owner of a ship, who has chartered out the hold, retains control of the navigation of the vessel, and bills of lading for goods consigned therein, which themselves contain the contract of affreightment, are issued by the master at the instance of the charterer to consignors, the owner is bound directly to the consignors for the performance of the contract of affreightment as contained in the bills of lading, and the consignors are not affected by provisions of the charter party inconsistent with such contract.

We are of the opinion that the appellant, the owner of the vessel, was legally bound by the stipulations of the three bills of lading issued to the Pensacola Lumber Company, although the bills were in conflict with the charter party. The shipowner was therefore obligated to pay to the owners of the jettisoned cargo, or to those subrogated to their rights, the amount of their loss.

[2] Having paid it, can the shipowner, the appellant, recover the amount from the charterer, the appellee?

The contract of charter party was duly executed by the owner of the vessel and the charterer through their authorized agents. The contract is mutual, imposing obligations upon each of the parties. It is elementary that either party who commits a breach of such a contract is liable to the other for at least actual damages. There was an express stipulation:

"Average (if any) in accordance with the York-Antwerp rules, 1890."

The rules referred to provided that:

"No jettison of deck cargo shall be made good as general average."

Such goods only as the charter party directed were to be received on the vessel. The charterer was to present to the master the bills of lading for his signature. Clearly, the charterer was not authorized or expected to present and procure the signing of bills of lading not in conformity to the charter party and that increased beyond its terms the liability of the owners. It did present such bills, and procured the signature of the master to them against his protest. It is contended that. as the charter party provided that the bills of lading were to be signed "without prejudice to this charter party," the bills would not be binding on the owners, or at least that the action of the charterer constituted no breach of the charter party.

In Turner et al. v. Haji Goolam Mahomed Azam [1904] A. C. 826, 91 Law T. Rep. 216, 219, it is held that the words "without prejudice to this charter" mean that the rights of the shipowners against the charterers, and vice versa, are to be preserved; that it is a term of the contract between the charterers and the shipowners, meaning that, notwithstanding any engagements made by the bills of lading, the charter party shall remain unaltered. To the same effect

is Hansen v. Harrold Brothers, 1 Q. B. (1894) 612, 619. This view is clearly recognized by the Supreme Court as correct in Crossman v. Burrill, 179 U. S. 100, 108, 21 Sup. Ct. 38, 41 (45 L. Ed. 106) where it is said:

"The provision of the charter party which requires 'the bills of lading to be signed as presented, without prejudice to this charter,' while it obliges the master to sign bills of lading upon request of the charterers, does not mean that the bills of lading, or the consignee holding them, shall be subject to all the provisions of the charter, but only that the obligations of the charterers to the ship and her owners are not to be affected by the bill of lading so signed."

The case of Krüger & Co. v. Moel Tryfan Ship Company [1907] A. C. 272, 97 Law T. Rep. 143, decided by the House of Lords, is an authority directly in point. The charter party in that case contained the clause that the master was to sign bills of lading "without prejudice to the charter party." He signed bills in conflict with the charter party which subjected the shipowners to loss. The owners sued the charterers for breach of duty, and it was held that the charterers had committed a breach of contract in presenting for signature bills of lading which imposed a greater liability on the shipowners than that imposed by the charter party, and that they were liable to indemnify the shipowners for the loss which they had incurred. The doctrine of these cases has been approved, in effect, by the decision of this court in Kennedy v. Weston & Company, 136 Fed. 166, 69 C. C. A. 78, where it is held, Pardee, Circuit Judge, delivering the opinion of the court, that an action for damages lies by the owner against the charterer who procures from the master, over his protest, a bill of lading which conflicts with the charter party, by which the owner is subjected to loss.

We are of the opinion that, on the facts alleged, the appellant has a cause of action against the appellee, and that the District Court erred in dismissing the libel.

Reversed.