THE ROBIN GRAY.

SEAS SHIPPING CO., Inc., v. APPROXI-
MATELY 3,251,000 FEET, BOARD
MEASURE, OF LUMBER, et al.
No. 334.

Circuit Court of Appeals, Second Circuit.
May 1, 1933.

See, also, 65 F.(2d) 375.

Baldwin & Barns, of New York City (Frank V. Barns, of New York City, of counsel), for appellant Seas Shipping Co.

Lord, Day & Lord, of New York City (George de Forest Lord, James S. Hemingway, and Joseph W. Wyatt, all of New York City, of counsel), for claimants-appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Appellant chartered its vessel, the Robin Gray, to the Southern Alberta Lumber Company. The vessel was loaded at various British Columbia and state of Washington ports with a full cargo of lumber for delivery at Boston and New York. Bills of lading were issued, negotiable in form, signed by the master. They referred to the charter party, and, although the charter freights had not been prepaid, all were marked "prepaid." The amounts shown as prepaid in the bills of lading were at the rate of $14.50 per thousand feet board measure, 50 cents per thousand feet more than the $14 provided in the charter. The bills of lading with invoices and sight drafts or trade acceptances attached, for the sale price of the lumber and the prepaid freight were forwarded by the Southern Alberta Lumber Company to various banks in New York and Boston, where the drafts and trade acceptances were presented to the consignees and, in the case of the Blanchard Lumber Company, one of the claimants-appellants, to a banking firm in Boston, with whom it had opened irrevocable letters of credit against the arrival of the documents. The trade acceptances were accepted and drafts paid by the consignees without knowledge that the representation in the bills of lading that the freight had been prepaid was incorrect. In some cases a separate draft or trade acceptance covered the amount of prepaid freight only; in others they were for the c. i. f. value at New York, including

freight. Thus the full amount of the freight shown on each bill of lading was actually paid by each claimant. The claimants purchased the lumber outright, except E. S. Loomis, Inc., and the Blanchard Lumber Company, which advanced money on the security of the bills of lading under agreements whereby they were to sell the lumber for the account of the Southern Alberta Lumber Company and repay to that company any balance over and above such advances and commissions. It had been the custom, under previous charters of like purport between the appellant and the Southern Alberta Lumber Company for the appellant to issue prepaid bills of lading to the charterer without requiring prepayment of the freight and to collect the charter hire from the charterer at destination. Thus the appellant relied upon the credit of the charterer. On the day the vessel sailed, libelant-appellant's president telegraphed the master to write the Southern Alberta Lumber Company and sign the letter himself demanding return of "prepaid ladings signed by me." The correspondence indicates that both the master and the libelant-appellant's president knew before the vessel sailed that the master had signed and issued prepaid bills of lading. It is sufficiently established, contrary to the contention of the libelant-appellant, that the prepaid bills of lading were issued with its knowledge and consent. Correspondence makes this plain, and it sufficiently overcomes the claim that, when the vessel sailed on the voyage, the libelant-appellant did not know that any prepaid bills of lading were outstanding. The freight for the charter hire was not paid, and there was nothing in the charter which would have disclosed to the consignees that the master of the ship was making untrue statements respecting it. The bills of lading all read: "He or they paying freight for the said goods in accordance with Charter Party dated October 5, 1926."

Clause 19 of the charter provides that the owner has a lien for freight due and the shipowner could enforce such lien for freight against cargo. It had notified the consignees by its bill of lading that no freight was due. Clause 7 gives the master the right to sign bills of lading, "at any rate of freight charterers might desire. * * *" The consignees, in accepting and paying drafts or trade acceptances covering the amount of prepaid freight shown in the bills of lading were literally complying with the clause of the bills of lading that "he or they paying freight for the said goods in accordance with Charter Party dated October 5, 1926."

The libelant-appellant contends that the issuance of the prepaid bills of lading had no effect upon its right to recover charter hire. There was nothing in the charter to put the consignee on notice that the freight was not paid, and the law is well established that a reference to a charter party in a bill of lading only incorporates that part of the charter not specifically covered by the bill of lading. The Albert F. Paul, 1 F.(2d) 16 (C. C. A. 2). In all the shipowner issued 116 bills of lading to the order of the charterer. The whole ship was chartered and was not a common carrier. The Oakley C. Curtis, 4 F.(2d) 979 (C. C. A. 2). The Federal Bill of Lading Act, applicable to common carriers, does not govern. Section 1, 49 USCA § 81, states: "Bills of lading issued by any common carrier * * * shall be governed by this chapter." That excludes bills of lading issued by a private carrier.

Having issued the bills of lading in negotiable form knowing that they might come into the hands of purchasers for value relying on the representation of prepaid freight and having made no attempt to inform the consignees of the fact that the freight was not prepaid, the libelant is estopped from denying that the freight was prepaid. The general rule of estoppel announced by this court in The Carso, 53 F.(2d) 372, Olivier Straw Goods Corp. v. Osaka, 27 F.(2d) 129, and The Esrom, 272 F. 266, has been applied in this situation (Yone Suzuki v. Central Argentine Ry. Co., Ltd. [D. C.] 275 F. 54; Howard v. Tucker, 1 B. & Ad. 712, 109 Eng. Reprint, 951), and in similar situations (Field Line, Ltd., v. South Atlantic S. S. Line, 201 F. 301 [C. C. A. 5]; Gilkinson v. Middleton, 2 C. B. N. S. 134, 140 Eng. Reprint, 363; Foster v. Colby, 3 H. & M. 705, 157 Eng. Reprint, 651). The libelant-appellant may not recover against the consignees.

The appellants Blanchard Lumber Company and E. S. Loomis, Inc., received the lumber on consignment for the account of the consignor, on commission, and to remit the balance less expenses. Blanchard guaranteed the solvency of all persons to whom it sold the lumber, and it agreed that drafts might be drawn by the Southern Alberta Lumber Company attached to the documents as might be mutually agreed upon from time to time, including negotiable bills of lading and insurance policies. The amount of drafts to the extent of 90 per cent. of the c. i. f. invoice value of the lumber was paid. Blanchard acquired the bills of ladings for value, without knowledge that the freight had not been prepaid, and paid therefor 90 per cent. of the invoice value of the lumber, plus the prepaid freight. E. S. Loomis, Inc., received the lumber on commission for the same account and advanced money in the same way. These factors were entitled to the same rights as purchasers.

The court below granted the benefit of the estoppel to the consignees of the lumber, but denied the same rights to the seller's factors. There is no reason for this distinction, for the doctrine of estoppel has equal application to the factors. They paid relying upon the representation of the bills of lading that the freight was prepaid. By paying, they obtained a lien on the lumber which gave them a position independent of the agency, and by estoppel their lien precedes that of the shipowner.

The decree will be modified so as to dismiss the libel as against all the claimants.

Decree modified.