---

## The L. B. Snow.

*(District Court, D. Massachusetts.  February 13, 1883.)*

1. Seamen's Wages—Libel.

A libel for seamen's wages will not necessarily be dismissed for the reason that the action was prematurely brought, if substantial justice can be done under it.

2. Same—Enforcement of Contract.

A written contract which appears to be a reasonable one, and, if enforced, will do no injustice to either party, will be so enforced by a court of admiralty, even though it appear that the meaning of the contract may not have been clearly understood by the parties.

3. WAGES OF MINOR—COSTS.

Where it appeared that the managing owner of a vessel was directed by the libelant, in an action by a father to recover the wages of a minor son, not to pay the wages to the son, but to retain them until the libelant called for them, and that the libelant never demanded them before the suit was brought, *held,* that the libelant could not recover costs.

In Admiralty.

*J. Cunningham,* for libelant.

*G. L. Ruffin,* for claimant.

NELSON, J. The libelant, Joseph Antone, proceeds for the wages of his minor son, Manuel Antone, earned during the season of 1882 on the fishing schooner L. B. Snow. The parties are Portuguese fishermen, living in Provincetown. In the shipping articles signed by Manuel with the approval of the libelant, on April 12, 1882, Manuel's share is stated to be "one-half a share with eight," and the voyage is described as a cod-fishing voyage, to terminate November 30, 1882. On April 22d the day the vessel sailed, the managing owner signed a separate paper, agreeing "to give Manuel Antone the sum of $200 at the expiration of the fishing season in the schooner L. B. Snow." On November 4th Manuel left the vessel when at Provincetown on one of her return trips, by command of the libelant, and against the objection of the skipper, and shipped on another fishing vessel for the rest of the season. The claim of the libelant is that the voyage was understood not to be for cod-fishing, but for "pollocking;" that there was a verbal agreement outside of the writings that Manuel was to serve only until the vessel "quit pollocking;" and that he left on November 4th because the vessel was then fitting for haddock fishing. The claimant, the managing owner, also insists that the writings do not correctly state the agreement. He claims the true contract to have been that he was to guaranty that Manuel's share in the voyage should not be less than $200, if he remained on board during the whole season, and that, as he left before the end of the season, the libelant cannot recover on the guaranty, but can only recover Manuel's share under the shipping articles, which he alleges to be $100.68, computed on a full share instead of a half share, which sum he offers to pay. It is quite possible that the parties may have misunderstood each other, or, in using a language with which they were more or less unfamiliar, they may have failed to express in their writings their exact meaning. The parol evidence in the case is conflicting. It is by no means clear, under the usages prevailing in Provincetown,

that there is any difference between voyages for cod, haddock, or pollock. These fish are taken on the same grounds, in the same season of the year, and with the same tackle, and are caught indiscriminately on all voyages such as this vessel was pursuing. But the written contract appears to be a reasonable one, and I am convinced that no injustice will be done to either side by enforcing it. Taking the shipping articles as modified by the contract of April 22d, the agreement was this: that Manuel should serve for the season ending November 30th, and was to receive for his wages for that period the sum of $200. No special damage is shown to have resulted to the owners from his having left before the end of the season. The libelant is therefore entitled to recover for the time of his son's actual service at the rate of $200 for the whole season fixed by the shipping agreement, which I find by computation to be $176.83.

This action was undoubtedly prematurely brought. The libel was filed November 8, 1882. At that time there had been no breach of the shipping contract by the owners. The only breach then existing was the act of the libelant in taking his son from the vessel before the end of the season. But the libel is not to be dismissed on that account, if substantial justice can be done under it. *The Hyperion's Cargo,* 2 Low. 93; *The Salem's Cargo,* 1 Spr. 389. Perhaps the claimant has waived the right to insist upon the objection by his admission in the answer that there is a sum due, and offering to pay it. But it appears from the testimony of the managing owner, which I believe, that he was directed by the libelant not to pay the wages to Manuel, but to retain them until he called for them, and that the libelant had never demanded them before this suit was brought. Upon such a case I do not think it would be just to require the claimant to pay costs.

The libelant and his minor son Frank, whose wages the libelant received, also served on this voyage. They both left the vessel before Manuel, the libelant being then in debt to the vessel for 43 cents and Frank for 22 cents. Since the libelant was to receive the wages of both his sons, it is proper that these sums should be deducted from Manuel's wages.

Decree for the libelant for $176.18, without costs.