MUNSON S. S. LINE v. GLASGOW NAV. CO., Limited.

(Circuit Court of Appeals, Second Circuit. May 15, 1916.)

No. 4.

1. ADMIRALTY ⊜⇒33—PREMATURE COMMENCEMENT OF SUIT—EFFECT.
It is not the practice in admiralty to dismiss a libel because prematurely filed, if the right has accrued afterward, and before the matter is presented for final determination. The fact that the suit was prematurely brought will affect only the matter of costs.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 313–315; Dec. Dig. ⊜⇒33.]

2. ADMIRALTY ⊜⇒117—PROCEDURE ON APPEAL—TRIAL DE NOVO.
Under rules 7–10 in admiralty of the Circuit Court of Appeals for the Second Circuit (150 Fed. lvii, lviii, 79 C. C. A. lvii, lviii), a libelant on appeal may properly be allowed to make new allegations in a supplemental libel and take new proofs in the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 748–757; Dec. Dig. ⊜⇒117.]

3. SHIPPING ⊜⇒85—INJURY TO STEVEDORE—RECOVERY AGAINST CHARTERER—SUIT AGAINST OWNER TO RECOVER OVER..
A charterer held not debarred of the right to maintain a suit against the owner to recover over after payment of a judgment recovered against it for injury to a stevedore, because of the insufficiency of the notice given to the owner to defend the action, where the result of such action could have no effect to determine liability as between charterer and owner.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 339; Dec. Dig. ⊜⇒85.]

4. SHIPPING ⊜⇒45, 47—CHARTERS—DUTY TO LOAD AND DISCHARGE.
In the absence of a contract or binding custom to the contrary, it is the duty of the owner to load and discharge his ship, and this duty applies to chartered ships, whether on time or voyage charters, provided the ship is not demised.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 177–183; Dec. Dig. ⊜⇒45, 47.]

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. SHIPPING ⬤═85—INJURY TO STEVEDORE—LIABILITY AS BETWEEN OWNER
AND CHARTERER.

A time charter of a steamer in government form, which was not a
demise of the vessel, required the owner to provide and pay for all pro-
visions, wages, and consular shipping and discharging fees of officers
and crew, and the charterer to pay all other charges. It further provided:
"All steam winches to be at charterer's disposal during loading and dis-
charging and steamer to provide men to work same." *Held* that, while
such provisions required the charterer to pay the expense of loading and
discharging, except for the winches and winchmen, they did not make such
loading and discharging the duty of the charterer, but left such legal
duty upon the owner, and that as between them the owner was responsi-
ble for an injury to a stevedore resulting from the negligence of a
winchman while discharging.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 339; Dec. Dig.
⬤═85.]

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit in admiralty by the Munson Steamship Line against the Glas-
gow Navigation Company, Limited. From a decree dismissing the
libel, libelant appeals. Reversed.

Haight, Sandford & Smith, of New York City (J. W. Griffin, of
New York City, of counsel), for appellant.

Kirlin, Woolsey & Hickox, of New York City (Charles R. Hickox
and Cletus Keating, both of New York City, of counsel), for appellee.

Before COXE and WARD, Circuit Judges, and AUGUSTUS N.
HAND, District Judge.

WARD, Circuit Judge. The libelant was charterer of the British
steamer Denaby under a time charter. While the cargo was being dis-
charged April 19, 1907, by the consignee, the American Sugar Refin-
ing Company, the stevedores undertook to lift one of the cross-beams
of No. 2 hatch, weighing about a ton and a half, into place, which
fell and injured one of them, named Michael Callahan. He brought
suit against the Munson Line, the charterers, and the American Sugar
Refining Company, the consignee of the cargo, in the Supreme Court
of the state of New York for Kings county, and on April 25, 1911, the
court dismissed the complaint as to the American Sugar Refining Com-
pany and submitted the case to the jury as to the Munson Line, against
which they rendered a verdict for $11,586.09. This was affirmed De-
cember 18, 1911, by the Appellate Division (Callahan v. Munson S. S.
Line, 147 App. Div. 934, 132 N. Y. Supp. 1123), and October 24, 1913,
by the Court of Appeals (209 N. Y. 546, 103 N. E. 1122).

November 20, 1911, the libelant filed this libel against the owner
of the steamer to recover anything it might ultimately have to pay on
account of the judgment rendered against it in the state court, from
which it was appealing. May 19, 1913, upon the respondent's excep-
tions, the libel was dismissed on the ground that the suit was prema-
ture. November 10 the libelant appealed, and January 12, 1914, with-
in 15 days after filing the apostles, applied under our rules in admiralty
7 to 10 (150 Fed. lvii, lviii, 79 C. C. A. lvii, lviii) for leave to make

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

new allegations, file a new pleading, and take new proofs in this court, which was granted.

Thereupon a supplemental libel was filed, setting up the payment by the Munson Line of Callahan's judgment. The respondent answered, alleging that the accident occurred because of the negligence of a winchman, who had been found by the state court to have been the servant of the charterer, libelant, which finding was binding on it and could not be contradicted in this court.

[1] The shipowner's first contention is that the District Judge properly dismissed the libel as premature. The admiralty is not technical in such matters; it aims to do substantial justice. In the course of common-law trials, at least in the state courts in this district, the statute of limitations would frequently run before the defendant had been compelled by the court of last resort to pay such a judgment. It would have been so in this case. The accident occurred April 19, 1907, and the libelant was not at the last ditch until October 24, 1913, more than six years thereafter. Its obligation to pay was first fixed April 25, 1911, and it filed the libel in this case November 20, 1911. It has been held that a sailor may recover his wages under a libel filed before he had completed his service and before there had been any demand or refusal. The L. B. Snow (D. C.) 15 Fed. 282. So, a libel having been filed for freight and demurrage, a supplemental libel was filed, setting up the same claim, together with a claim for demurrage thereafter incurred. Judge Benedict said:

"No injustice can result to the claimant from this course. The practice pursued, if not strictly regular, has in this case wronged no one, but, on the contrary, tended to save trouble and expense." 841 Tons of Ore (D. C.) 25 Fed. 864.

So, a libel having been filed to recover the price of setting up a boiler in a tug before payment was due, Green, J., said:

"But I think it is clear from the evidence that neither the claimants, nor Townsend & Co., nor any one on behalf of either of them, have ever tendered to the libelants, in fulfillment of their part of the contract, the note their contract called for, and that the right to libel has since the 19th day of December, 1891, been vested in the libelants. Had it been filed not until then, it would have been properly filed, as far as time is concerned. But the premature filing of a libel, if the right to libel accrues afterwards, and before the determination of the issue, affects the question of costs only. It is not necessary, nor is it the practice in admiralty, to dismiss such libel, if when the matter is presented to the court for final determination, it appears that the right to libel exists." The Pioneer (D. C.) 53 Fed. 279.

And in The Laselle (D. C.) 193 Fed. 539, a suit in rem was sustained to recover for lightering, refloating, and reloading a stranded vessel, although the reloading had not been completed. The circumstance that a suit is prematurely brought will only affect the question of costs.

[2] The shipowner next objects that we improperly allowed a supplemental libel with new allegations to be filed and new proofs to be taken in this court. It is the settled practice in this circuit to treat an appeal in admiralty as a trial de novo. Munson Line v. Miramar S. S. Co., 167 Fed. 960, 93 C. C. A. 360. And under our rules in admiralty 7 to 10, inclusive, the libelant was properly allowed to make

new allegations in a supplemental libel and take new proofs in this court.

[3] It is next objected that the notice to the respondent to come in and take part in the trial in the state court was too short and was accompanied by an illegal condition. The notice was given March 23, 1911, by cable to the respondent in Glasgow and on the same day to counsel in this city for the West of England Club in which the steamer was entered. The cause was tried March 28 and 29. No objection was made to this notice as being too short, and as the question to be litigated was not the liability of the owner, but the liability of the charterer, preparation of the owner's case was not necessary. We think this objection without merit. The notice required that the owner should admit liability as between itself and the charterer. It was not obliged to do this, and taking part in the trial would not have constituted such an admission. The charterer could not qualify its rights in this way. The purpose and effect of such a notice was to make the finding of the jury conclusive upon the owner in the following respects:

(1) As to the plaintiff's right to recover against the defendant.

(2) As to the amount of the plaintiff's recovery.

But the liability of the owner over to the charterer, if any, would have to be settled in a subsequent suit to be brought by it against the owner, such as the present.

[4] Now follows a most material inquiry, viz.: Who in point of law was doing the unloading, and therefore for whom was the negligent winchman acting? We have no doubt that, in the absence of a contract or of a custom binding upon the parties to the contrary, it is as much the duty of the shipowner to load and discharge the cargo as it is to carry it between the loading and discharging ports. In early days the crew did the loading and discharging, but in modern times it is done, at least in large ports, by master stevedores, who are independent contractors. All regular liners are so loaded and discharged. This duty of the owners applies to chartered ships, whether on time charters or voyage charters, provided the ship is not demised. Of course, when the charter is a demise, the charterer is to be treated pro hac vice exactly as if the owner.

[5] Now by the law of this circuit the charter known as the government form is not a demise. Clyde Commercial S. S. Co. v. West India S. S. Co., 169 Fed. 275, 94 C. C. A. 551; Luckenbach v. Insular Line, 186 Fed. 327, 108 C. C. A. 405. The charter party under consideration is such form. No custom is alleged, making it the duty of the charterer under a charter which is not a demise to load and unload the cargo. Therefore we have to inquire whether it was the charterer's duty to do so under the charter in this case. The material articles are:

"1. That the owner shall provide and pay for all the provisions, wages and consular shipping and discharging fees of the captain, officers, engineers, firemen and crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine room and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service.

"2. That the charterers shall provide and pay for all the coals, port charges, pilotages, agencies, commissions, consular charges (except those pertaining to

the captain, officers or crew), and all other charges whatsoever, except those before stated.

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"24. Steamer to work night and day if required by charterers, and all steam winches to be at charterers' disposal during loading and discharging, and steamer to provide men to work same both day and night as required, charterers agreeing to pay extra expense if any incurred by reason of night work, at the current local rate."

It is quite plain from the foregoing provisions that the charterer is to pay the expense of the loading and unloading except for the winches and winchmen, who are to be provided by the owner, though any extra payment for night work is to be defrayed by the charterer. This obligation to pay for the unloading does not make the unloading the duty of the charterer, but leaves the legal duty of loading and discharging upon the owner, just as the duty of navigation remained upon the owner, although it was being performed by a supercargo appointed and paid by the charterer. The Volund, 181 Fed. 643, 104 C. C. A. 373.

This duty is often varied by special provisions, such as that the ship shall employ the charterer's stevedore, or a stevedore to be approved by the charterer, or that the charterer or shipper or consignee shall load or unload. In the case of The Elton, 142 Fed. 367, 73 C. C. A. 467, which we infer was a voyage charter, it was provided that the consignee should unload, the ship furnishing winches and winchmen, and the master stevedore's contract was with him. In The Slingsby, 120 Fed. 748, 57 C. C. A. 52, which we understand to have been a voyage charter, the vessel did the unloading under a contract with the master stevedore, the ship to furnish winches and winchmen. In The Centurion (D. C.) 57 Fed. 412, the time charterer had charge of the loading. Cargo being damaged by bad stowage, Brown, J., held the time charterer primarily and the ship secondarily liable to the cargo owners. In Bull v. N. Y. & Porto Rico S. S. Co., 167 Fed. 792, 93 C. C. A. 182, the time charterers had the duty of unloading and had also agreed that there should be no claim against the owners for loss of cargo, for which reason they had to bear the cargo damage.

Cases of personal injury to a stevedore resulting from negligence of a winchman supplied by the ship, in which the question was whether the stevedore and the winchmen were fellow servants, discussed in the briefs, do not throw much light on the question here involved. The view of this court in The Slingsby that they were not fellow servants was affirmed in Standard Oil Co. v. Anderson, 212 U. S. 215, 29 Sup. Ct. 252, 53 L. Ed. 480; but the liability of the shipowner and charterer inter sese for such an injury was not raised. In that case and in Johnson v. N. A. S. N. Co., 132 N. Y. 576, 30 N. E. 505, the owners were unloading their own vessels. It may be conceded that the jury found that Callahan was injured as the result of the negligence of the winchman, and that the court held that the winchman was the servant of the charterer, and not of the stevedore, and therefore, not being fellow servants, the defendant was liable. This would be true if the stevedore was doing the charterer's work, but not if he was doing the ship's. We hold that he was doing the ship's work.

The unloading was actually being done by the American Sugar Refining Company, consignees of the cargo. What their contract with the charterer was we do not know. The charter party is the document which regulates the relation of the shipowner and the charterer, while the bill of lading regulates those of the charterer and cargo owners; but no bill of lading is in evidence. Between those parties the charterer may have been the carrier, under the duty of unloading, and may have let the consignee do it, agreeing to furnish winches and winchmen. If so, then between them and their stevedores the winchman would be the servant of the charterer, performing its duty of unloading. Notwithstanding this, he would be, as between the shipowner and the charterer, the servant of the shipowner and performing the duty of the shipowner, if we have rightly construed the charter party. There would then be no inconsistency between the judgment of the state court, holding the winchman to be the servant of the charterer, and the right which it seeks to enforce against the shipowner in this case.

But, assuming that the state court, as matter of law, erroneously found the charterer liable for the negligence of the winchman, that should not prevent the charterer from claiming indemnity from the shipowner, if, as we have found, the discharging of the cargo was the shipowner's duty, and this accident was caused by the negligence of the winchman as the shipowner's servant.

The decree is reversed.