**Ioannis Augousti SARIDIS, Libellant,**

v.

**Liberian S.S. PARAMARINA, etc., Respondents.**

No. 475.

United States District Court
E. D. Virginia,

Newport News Division.

Oct. 4, 1962.

Burt M. Morewitz, Newport News, Va., for libellant.

Seawell, McCoy, Winston & Dalton and Vandeventer, Black, Meredith & Martin, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, Chief Judge.

By his amended and supplemental libel the libellant sues for earned wages, waiting time for failure to pay wages in accordance with the statutes of the United States, alleged negligence and unseaworthiness of the vessel resulting in an injury to libellant, and maintenance and cure together with damages for failing to provide same. In addition to proceeding against the vessel, libellant has named as parties respondent the master of the vessel; Saguenay Shipping, Ltd.; Saguenay Terminals, Ltd.; Compania de Vapores Marina, Lda.; N. & J. Vlassopulos, Ld.; Vlassopulo Brothers, Ld.; and Philip N. Vlassopulos, as owners and/or operators of the Liberian SS PARAMARINA. The amended and supplemental libel makes the naked allegation "that at all times hereinafter mentioned, the respondents owned, operated and/or controlled the Liberian SS PARAMARINA." The libel does not allege the flag of the vessel, but does assert that libellant was entitled to the full balance of his earned wages when the vessel was at Hampton Roads, Virginia, on or about August 11, 1957, and March 14, 1958, and that, despite his demand for same, said wages were not paid to him.

The original libel did not name Saguenay Shipping, Ltd. or Saguenay Terminals, Ltd. A purported service of the monition was made on Hasler & Company as alleged agents for Compania de Vapores Marina, Lda.; N. & J. Vlassopulos, Ld.; and Vlassopulos Brothers, Ld., as requested by proctor for libellant. A purported service of a citation was likewise made upon the Clerk of the State Corporation Commission of Virginia as the alleged statutory agent of Compania de Vapores Marina, Ltd. Such purported services are contested by these particular respondents. The vessel has never been arrested. The Court has previously held that Hasler & Company

was not serving as the agent for the foregoing respondents and sustained exceptions with respect to this service of process but continued the matter as to the service upon the Clerk of the State Corporation Commission and directed the answering of interrogatories to determine the factual question as to whether these respondents were "doing business or transacting affairs" in Virginia to make said respondents amenable to service of process.

Immediately prior to the filing of the amended and supplemental libel an alias monition was served upon Hasler & Company as the alleged agent of N. & J. Vlassopulos, Ld.

All of the foregoing services are contested by the respondents who have appeared specially for this purpose.

Following the filing of the amended and supplemental libel an attempted service of a monition was made upon Hasler & Company as the alleged agent of Saguenay Shipping, Ltd., and Saguenay Terminals, Ltd. Hasler & Company admits that it was the agent for Saguenay Shipping, Ltd., but for no other named respondent. Attempted services of alias monitions were also made upon other named masters of different vessels under the theory that said masters were agents for N. & J. Vlassopulos, Ld., and Vlassopulos Brothers, Ld. As previously noted, these services are likewise contested.

We are immediately concerned with exceptions filed by Saguenay Shipping, Ltd., who was properly served. The exceptive allegations allege that at all times stated in the amended and supplemental libel, Saguenay Shipping, Ltd., was the time charterer of the SS PARAMARINA and was not the employer of the libellant.

The record adequately discloses that Saguenay Shipping, Ltd., was the time charterer of the vessel pursuant to to a charter party dated November 11, 1957, from Saguenay Terminals, Ltd., the latter being described as "time char-

tered owners." Among other particulars the time charter provides that "Terminals" will provide and pay for all provisions, wages (including overtime except during loading and discharging cargo) and of particular significance to the issue now before the Court the following clauses appear:

"8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and agency; and the Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts."

*and*

"26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the navigation of the vessel, insurance, crew, and all other matters, same as when trading for their own account."

The stated provisions, with one minor exception not pertinent, are contained in the standard form Time Charter, Government Form, approved by the New York Produce Exchange, as revised October 3, 1946. While the charter party aforesaid does not cover the entire period during which libellant was employed, there is on file a similar Time Charter dated December 26, 1956, between N. & J. Vlassopulos, Ltd., described as "agents for owners of the Liberian SS Amberton to be renamed", and Saguenay Terminals Limited, described as "charterers." The vessel was subsequently renamed PARAMARINA[1] and Saguenay Terminals later executed the Time Charter dated November 11, 1957.

---

1. An addendum to the charter of December 26, 1956, reflects the name changed to PARMARINA but all pleadings refer to PARAMARINA.

■■ The effect of a time charter is discussed in Gilmore & Black, The Law of Admiralty, § 4–1, p. 170, et seq. It is sufficient to state that it differs from a demise or bareboat charter in that, under the latter, the charterer becomes the owner *pro hac vice*. Under a time charter the owner's people continue to navigate and manage the vessel; the charterer merely takes over her carrying capacity and, for this purpose, the vessel is under charterer's orders as to ports touched, cargo loaded, and other business matters. The warranty of seaworthiness rests upon the owner.

Libellant contends that Saguenay Shipping, Ltd., was the owner *pro hac vice* of the vessel by reason of the provisions of Clause 8 aforesaid. We do not agree. While that portion of Clause 8 which states that the master shall be under the direction of the charterers as regards "employment and agency" may be an attempt by the owner to isolate himself from *in personam* liability to the cargo interest, it has never been given the broad interpretation now urged by the libellant, i. e., that the charterer becomes the owner *pro hac vice* as to the seamen on the vessel. Gilmore & Black, The Law of Admiralty, § 4–17, p. 208; Field Line v. South Atlantic S. S. Line, 5 Cir., 201 F. 301, 304.

In The Norland, 9 Cir., 101 F.2d 967, 971, 9 Alaska 471, the test of an owner *pro hac vice* is stated to be thus:

"The test of whether a charter is a complete demise of a vessel so as to make the charterer owner *pro hac vice* is whether entire command and possession of the vessel, and consequent control over its navigation, has been surrendered to the charterer. 58 C.J., Shipping, § 224, p. 152. Retention by the general owner of such command, possession and control is incompatible with the existence at the same time of special ownership in the charterer."

While not precisely in point, the situation is not unlike the line of cases arising under the General Agency Agreements during World War II where the Supreme Court held that general agents could not be sued for injuries sustained through the negligence of the master and officers, or for maintenance and cure. Cosmopolitan Shipping Co. v. McAllister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692; Weade v. Dichmann Co., 337 U.S. 801, 69 S.Ct. 1326, 93 L.Ed. 1704; Fink v. Shepard S. S. Co., 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709.

■■ Courts are not inclined to regard the contract as a demise of the ship if the end in view can conveniently be accomplished without the transfer of the vessel to the charterer. Even where words of demise are used, yet it must appear that the instrument taken as a whole was intended to operate as such or it will not be so construed. Reed v. United States, 11 Wall. 591, 78 U.S. 591, 20 L.Ed. 220. Cf. United States v. Shea, 152 U.S. 178, 14 S.Ct. 519, 38 L.Ed. 403; Ruiz Pichirilo v. Maysonet Guzman, 1 Cir., 290 F.2d 812; Vitozi v. Balboa Shipping Co., 1 Cir., 163 F.2d 286.

Libellant relies upon Rodriguez v. Solar Shipping, Ltd., D.C., 169 F.Supp. 79, and Applewhaite v. The S. S. Sunprincess, D.C., 150 F.Supp. 827. The latter case is wholly inapplicable and does not merit discussion. In Rodriguez the court merely states that "[t]he terms of the charter contract, the intention of the parties, the employer-employee relationship, and the condition of the vessel at the time of the charter all raise triable issues of fact which cannot be settled by such a motion" (summary judgment). Here, however, we have nothing but the bare allegation of the libel to the effect that six respondents "owned, operated and/or controlled the Liberian SS PARAMARINA." In the face of the charter which is of record and not controverted it is clear that the respondent, Saguenay Shipping, Ltd., was merely a time charterer and not responsible for the various causes of action alleged in the amended and supplemental libel. Moreover, while not deemed pertinent at this time, the employment contract entered into with libellant on July 17, 1957, stated the owner of the vessel to be Cia De Vapores

Marina Ltda., with agents N. & J. Vlassopulos, Ltd., and Triton United Shipping Agencies. It would impose an undue burden upon a respondent to be required to prepare for a trial upon the merits where the obvious result would be an exoneration of that respondent because it was only a time charterer of the vessel.

An order will be entered sustaining the exceptions as filed by Saguenay Shipping, Ltd.