Ralph MONDELLA, Libelant,

v.

The S.S. ELIE V, her engines, boilers, etc., S.S. Elie V Steamship Company, and Amerind Shipping Corporation of Delaware, Respondents.

United States District Court
S. D. New York.
Oct. 22, 1963.

Solomon J. Cohen, New York City, Donald S. Sherwood, New York City, of counsel, for libelant.

Thomas H. Healey, Hill, Betts, Yamaoka, Freehill & Longcope, New York City, for respondent Elie V.

Dougherty, Ryan, Mahoney & Pellegrino, New York City, for respondent Amerind.

BONSAL, District Judge.

Respondent Amerind Shipping Corporation of Delaware (Amerind) moves pursuant to Admiralty Rule 58 for summary judgment in its favor on the libel and also on the cross-claim of respondent SS ELIE V Steamship Company (ELIE). The libel arises by reason of alleged personal injuries sustained by libelant, a longshoreman, while working aboard the SS "ELIE V" on July 7, 1962, as a gangwayman during the discharge of cargo. At the time of the alleged injury the vessel was under a charter from ELIE, as owner of the vessel, to Amerind, and a sub-charter on virtually identical terms from Amerind to Waterman Steamship Corporation, not a party in this proceeding.

The libel alleges that ELIE and Amerind operated and controlled the SS "ELIE V". It also alleges that Amerind "was acting as a result of a contract for stevedoring operations with International Terminal Operating Co., Inc." (ITO). ITO is libelant's employer. The acts and omissions upon which libelant's claims are based are attributed to "the respondents", and libelant does not specify which acts and omissions he attributes to ELIE or Amerind or both.

In its cross-claim for indemnification against Amerind, ELIE alleges that under the charter between it and Amerind, Amerind agreed to perform all stevedoring operations aboard the vessel and by law impliedly warranted the proper performance of the stevedoring operations. ELIE further alleges that control of the parts of the ship referred to in the libel had been turned over to Amerind in connection with the stevedoring operations; that if libelant sustained any injuries, those injuries were caused by the negligence of Amerind or by an unseaworthy condition created by Amerind "and those for whom it was responsible, their agents, servants and employees".

The charter between Amerind and ELIE is a time charter.[1] Paragraph 26 of the charter so provides, and the contract is entitled "TIME CHARTER".

1. The charter is on a printed form approved by the New York Produce Exchange, as last amended on October 3, 1946. This form is widely used, and is reproduced and discussed in Gilmore & Black, supra at 204–215, 217 and 802–809.

The other provisions of the charter confirm this conclusion. See Gilmore & Black, Admiralty 217 (1957).

█ Under a time charter, the charterer merely rents cargo space, Randolph v. Waterman Steamship Corp., 166 F. Supp. 732, 733 (E.D.Pa.1958); and has no property interest in the vessel, Bergan v. International Freighting Corp., 254 F.2d 231, 232 (2d Cir. 1958). The shipowner's crew manages and controls the ship, Saridis v. Liberian S.S. Paramarina, 216 F.Supp. 794, 1963 A.M.C. 425, 428 (E.D.Va.1962). The responsibility for the seaworthiness of the ship rests upon the shipowner, and not the time charterer, and the time charterer owes no warranty of seaworthiness to seamen, longshoremen or other shoreside workers. Montoya v. M/S Peter Nielsen, 1962 A.M.C. 2515, 2519 (N.D.Calif. 1962). The loading and discharge of cargo is also the shipowner's responsibility, Munson S.S. Line v. Glasgow Nav. Co., 235 F. 64, 67 (2d Cir. 1916); and the responsibility does not shift simply because the time charterer may appoint the stevedore. Montoya v. M/S Peter Nielsen, supra at 2518–2519 of 1962 A.M.C.

█ None of the provisions of the time charter between Amerind and ELIE are at variance with the principles that are usually applicable between time charterer and shipowner. With respect to the seaworthiness of the vessel, the charter describes the ship as "good * * * and with hull, machinery and equipment in a thoroughly efficient state * * *". Paragraph 1 states that the owners shall "keep the vessel in a thoroughly efficient state in hull, machinery and equipment * * *". Thus, under the charter ELIE warrants to Amerind the seaworthiness of the ship. See Gilmore & Black, supra at 204.

Paragraph 8 of the contract provides:

"8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally Clerk's receipts without prejudice to this Charter Party."

█ This paragraph does not, as ELIE contends, shift the responsibility for stevedoring operations, or the control of the ship or any portion thereof, to Amerind. Indeed, it expressly provides that cargo operations are to be under the Captain's supervision. Amerind's agreement to pay for the cargo operations does not make it responsible for the conduct of those operations. Munson S.S. Line v. Glasgow Nav. Co., supra, 235 F. at 68. ELIE's agreement that the charterer shall direct the Captain as regards employment and agency may be an attempt to isolate the owner from *in personam* liability to the cargo interest, Gilmore & Black, supra at 208, but it does not place the Captain under the charterer's control with respect to the management of the ship and crew or give the charterer control over the Captain or ship in any respect that is material to the issues in this case. Saridis v. Liberian S.S. Paramarina, supra, 216 F. Supp. at 796–797; 1963 A.M.C. at 427–428; Apodoca v. Cia De Navegacione Del Plota, 18 Cal.Rptr. 869, 1962 A.M.C. 964, 968–969 (California Dist.Ct.App., 1st Dist., 1962); Montoya v. M/S Peter Nielsen, supra. The charter contains none of the special provisions which the Court in Munson S.S. Line v. Glasgow Nav. Co., supra, 235 F. at 68, suggested might shift the duty of unloading from the shipowner to a time charterer. Paragraph 4, cited by ELIE, is not such a provision since at most it provides for indemnity to ELIE by Amerind in the event of damage to the vessel.

Paragraph 2 of the charter provides in part that:

"Charterers are to provide dunnage and shifting boards, also any

extra fittings requisite for a special trade or unusual cargo, but Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards for dunnage, they making good any damage thereto."

There is no claim that any equipment supplied by Amerind under this provision or any other provision of the charter was defective and caused libelant's alleged injuries, or even that Amerind supplied any equipment under the charter. Responsibility for maintenance of the ship's gear is imposed upon the owners by paragraph 22 of the charter. That paragraph provides that the owner shall maintain the gear of the ship as fitted, the charterer to have the use of any gear on board the vessel.

 The charter is not the only possible source of a time charterer's liability. As was pointed out in Bergan v. International Freighting Corp., supra, 254 F.2d at 233, a charterer might by agreement with a shipowner's employees constitute them its sub-employees. And theoretically such an agreement with a stevedore is possible, notwithstanding that ordinarily one who hires a stevedore does not make the stevedore's employees its sub-employees. In the present case, however, there is no evidence of any such agreement by Amerind. Nor is there any claim that employees of Amerind participated in the events that are the subject of the action. So far as the papers before the Court disclose, the only persons here involved are crew members of the SS "ELIE V" and longshoremen employed by ITO, the stevedore.

 A time charterer is entitled to the dismissal upon motion of claims against it by crew members or longshoremen for personal injuries sustained aboard the chartered vessel in the absence of a showing of an affirmative duty owed by the time charterer. This has been the result, without exception, in cases involving the form approved by the New York Produce Exchange, which was the form used here, Saridis v. Liberian S.S. Paramarina, supra; Montoya v. M/S Peter Nielsen, supra; Apodoca v. Cia De Navegacione Del Plota, supra, and in cases involving other types of time charters. Travis v. Poseidon Lines, 203 F.Supp. 129 (N.D.Ill.1962); Hoodye v. Bruusgaard Krosterud Skibs A/S Drammen, Norway, 197 F.Supp. 697 (S.D.Tex. 1961); Randolph v. Waterman Steamship Corp., supra; Considine v. Black Diamond Steamship Corp., 163 F.Supp. 109, 110 (D.Mass.1958) (dictum); see also Munson S.S. Line v. Glasgow Nav. Co., supra, reversing a decree which had denied indemnity to the time charterer from the shipowner for injuries sustained by a longshoreman during unloading, involving an earlier version of the New York Produce Exchange form; and Bergan v. International Freighting Corp., supra, affirming the dismissal of a Jones Act case against a time charterer at the end of plaintiff's case because the evidence did not permit an inference that plaintiff, a crew member, was an employee of the time charterer.[2]

 It is noted that Amerind had subchartered to Waterman prior to the alleged injuries which are the subject matter of the libel, and that Amerind states it did not employ ITO, the stevedore. This has not been contradicted, except for the general allegations of the pleadings which are insufficient to raise a genuine issue of fact on this motion. Cf. Fed.R.Civ.P. 56(e), as amended July 1, 1963, and the Advisory Committee notes thereto.

Amerind's motion for summary judgment in its favor against libelant and ELIE will be granted.

Settle order on notice.

---

2. But cf. Rodriguez v. Solar Shipping, Ltd., 169 F.Supp. 79, 81 (S.D.N.Y. 1958), denying a motion for summary judgment by a shipowner who claimed its ship was under a demise charter to another.