Jose FERNANDEZ, Plaintiff,

v.

CHIOS SHIPPING CO., LTD., Defendant
and Third-Party Plaintiff,

v.

MAHER STEVEDORING COMPANY,
INC. and States Marine Lines, Inc.,
Third-Party Defendants.

CHIOS SHIPPING CO., LTD.,
Fourth-Party Plaintiff,

v.

CASTLE & COOK, INC., Dole Corp. and
Castle & Cook Foods Corporation,
Fourth-Party Defendants.

No. 71 Civ. 2786.

United States District Court,
S. D. New York.

Jan. 15, 1976.

Di Costanzo, Klonsky & Cutrona, P. C. by Robert Klonsky, Brooklyn, N. Y., for plaintiff.

Zock, Petrie, Reid & Curtin by Edwin K. Reid, New York City, for defendant and third-party plaintiff.

McHugh, Heckman, Smith & Leonard by James M. Kenny, New York City, for third-party defendant Maher Stevedoring Co., Inc.

Boal, Doti & Larsen by William P. Larsen, Jr., New York City, for third-party defendant States Marine Lines, Inc.

Fogarty & Wynne by Joseph Edward Brady, New York City, for fourth-party defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Jose Fernandez was a longshoreman employed as a holdman by third-party defendant Maher Stevedoring, Inc. ("Maher"). On September 1, 1968, he was injured aboard the SS CHIOS, owned by defendant and third-party plaintiff Chios Shipping Company, Ltd. ("Chios"), as he

was assisting in the unloading of a cargo of pre-palletized cartons of pineapple at Port Newark, New Jersey. The cartons of pineapple had been prepared and shipped by the fourth party defendants Castle & Cook, Inc., Dole Corp., and Castle and Cook Foods Corporation ("Castle & Cook"). At the time of injury, the SS CHIOS was time chartered to third-party defendant States Marine Lines, Inc. (referred to herein by its present name, "Isco, Inc.").

This case was tried before a jury on June 2, 3, 4, 5, and 6, 1975. In answer to special questions, the jury found on June 5 that the SS CHIOS was unseaworthy, that such unseaworthiness was the proximate cause of plaintiff's injuries, that plaintiff was not contributorily negligent, and that plaintiff was entitled to damages amounting to $90,-200. Judgment in favor of the plaintiff against the defendant Chios was entered on July 8, 1975.

On June 6, 1975, additional questions were submitted to the jury to resolve the various third-party and fourth-party claims for indemnity. These questions and the jury's responses are set forth below:

"1. Have the parties claiming indemnity against Maher Stevedoring Co., Inc., sustained their burden of proving that the stevedoring company which unloaded the pallets breached its warranty of workmanlike performance by failing to properly supervise and direct its employees with respect to the unloading operation and to provide for the safety of its employees?

YES   (X)
NO   ____

2. Have the parties claiming indemnity against Maher sustained their burden of proving that the stevedoring company in unloading the pallets breached its warranty of workmanlike performance by improperly loading the pallet in question on to the forklift?

YES   ____
NO   (X)

3. Have the parties claiming indemnity against Maher sustained their burden of proving that the stevedoring company breached its warranty of workmanlike performance by failing to comply with the applicable Safety Regulation with respect to unloading by pallet?

YES   ____
NO   (X)

4. If the answer to any of Questions 1, 2, or 3 is Yes, have these parties sustained their burden of proving that the stevedore's action was a proximate cause of plaintiff's injuries?

YES   (X)
NO   ____

5. If you find that the stevedore breached its duty in any of the respects discussed in Questions 1, 2, or 3, do you find that the Captain or any member of the ship's crew knew or should have known of the condition?

YES   ____
NO   (X)

6. If the answer to Question 5 is Yes, do you find that the ship's agents acquiesced in the longshoremen working under such condition?

YES   ____
NO   ____

7. If you find that the answer to Questions 5 and 6 is Yes, do you find that the ship's agents' failure to remedy the condition so outweighed the breach of the stevedore's duty so as to preclude indemnity from the stevedore?

YES   ____
NO   ____

8. Have the parties claiming indemnity against the Castle Cook-Dole Group sustained their burden of proving that the pre-palletized pineapple unit which broke apart on being lifted was the result of negligence on the part of the Castle Cook-Dole Group?

YES   (X)
NO   ____

9. Have the parties claiming indemnity against the Castle Cook-Dole Group sustained their burden of proving that the pineapple unit which broke apart was the result of a latent or hidden defect in the pallet?

YES   (X)

NO   _____

10. If the answer to either Question 8 or 9 is Yes, have the parties sustained their burden of proving that the Castle Cook-Dole Group's actions were a proximate cause of plaintiff's injuries?

YES   (X)

NO   _____"

Inasmuch as Chios, Maher, Isco, and Castle & Cook all seek indemnity from each other, their claims will be separately considered.

Liability of the third party defendant charterer, Isco, to the third-party plaintiff ship owner, Chios, is predicated upon clause 8 of the time charter agreement. That clause provides, in relevant part, that "[c]harterers are to load, stow, and trim and discharge the cargo at their expense under the supervision of the Captain. . . ." On this basis, "Chios claims a right over against [Isco] for any liability to plaintiff arising out of breach of the aforesaid charter party upon a finding, if any, of its failure to properly load, stow, and discharge the palletized packages of pineapple."[1]

While the basis of the liability asserted by Chios here is not entirely clear, it is referred to in the pre-trial order as "breach of charter party,"[2] and appears to be a species of liability without fault on the part of the charterer, in the nature of a warranty of safe and proper performance of the cargo operations. The court agrees that the charterer should indemnify Chios on this basis.

Both in argument and in memoranda, Chios relies heavily on two cases from this Circuit which have dealt with the respective liabilities of charterer and ship owner for cargo damage which occurred aboard ships operating under time charter.

In *Nichimen Company v. M. V. Farland,* 462 F.2d 319 (2d Cir. 1972), Chief Judge Friendly had occasion to construe a virtually identical clause in a time charter agreement to determine whether a ship owner or charterer would be held liable for cargo damage which occurred due to negligent stowage by a cargo "specialist" who had been hired by the charterer's port agent in Japan. In the circumstances of that case, Judge Friendly held that, under the time charter clause cited above, "[t]he charterer's prime responsibility for loading and stowage is not destroyed by the qualification that this shall be 'under the supervision of the Captain,' a phrase doubtless intended to make plain the master's right to veto a plan that might imperil the seaworthiness of the vessel . . . not to impose on him a duty, as the owner's agent, to supervise the charterer's stow." 462 F.2d at 332. Thus, the supervisory authority contractually retained by the Captain was held not to be a bar to indemnification by the charterer for cargo damage incident to stowage.

Judge Friendly then touched on the question of negligence in a manner which makes the precedential value of that case to the facts at bar somewhat problematical. "Had the stowage in this case been properly designed by the charterer's agent, no damage would have occurred. The primary negligence was of the charterer's agent, and we can discern no valid reason why the charterer should now be allowed to shift the cargo damage to the owner on the theory that the Captain, on behalf of the owner, should have corrected its improper stowage. Rather, under clause 8, the safety of the stowage, insofar as cargo damage is concerned, generally is the primary responsibility of the charterer." (462 F.2d at 332.) (footnote and citation omitted).

It is not entirely clear to what extent, if any, the ship owner's right to indemnification was dependent upon some showing of negligence—either direct or imputed—on

---

1. This claim is found in a memorandum prepared by Chios setting forth its contentions with respect to the charterer's liability.

2. Pre-Trial Order, Exhibit A, p. 4.

the part of the charterer. While Judge Friendly spoke of the "primary negligence" of "the charterer's agent," the opinion revealed no evidence of direct negligence by the *port agent*; rather, the negligence in the case appears to be that of the stowage "specialist" *hired* by the port agent. As a matter of agency law, it seems entirely possible that the "specialist" might be deemed an "independent contractor", whose negligence might or might not be imputed to his employer,[3] although that issue was not discussed in the opinion.

It may be that the finding of negligence on the part of the charterer's agent, therefore, is dependent upon the Court's holding that the duty of care imposed upon the charterer by § 3(2) of the Carriage of Goods by Sea Act (COGSA)[4] is nondelegable, 462 F.2d at 330, and that the charterer is, in effect, vicariously liable under COGSA for the negligence of even independent contractors which it hires. If that were the crux of the Court of Appeals' reasoning, then the charterer's liability for indemnification would be confined to cargo damage cases governed by COGSA, absent some showing of either direct negligence by the charterer, or negligence imputable to him under the law of agency.

Such a reading of *Nichimen* finds some support in *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009 (2d Cir. 1972), another Second Circuit case decided almost contemporaneously with *Nichimen,* but by another panel of the Court of Appeals. That case also involved, *inter alia,* the respective liabilities of ship owner and time charterer for cargo damage due to improper stowage and discharge. *Demsey* was also a COGSA case in which the charterer was found responsible for stowage of goods, both by statute (46 U.S.C. § 1303(2)) and by the terms of the standard time charter agreement.

The Court of Appeals affirmed the finding of the District Court that the time charterer had breached its duty to load and stow the goods, apparently because the stowage was deemed negligent, 461 F.2d at 1016, and granted the ship owner indemnity from the charterer in the amount of the cargo damage. Again, it is not entirely clear whether the finding of the charterer's negligence was dependent upon the fact that the charterer's agent designed the stowage plan, *Demsey & Associates, Inc. v. S.S. Sea Star,* 321 F.Supp. 663, 667 (S.D.N.Y.1970), or whether it was vicarious—predicated upon the negligence of the stevedore (hired by the charterer) in carrying out the stowage operation,[5] irrespective of any direct negligence by the charterer.

It is possible to read both *Nichimen* and *Demsey* to stand for the narrow proposition that, in cases of cargo damage, the ship owner is entitled to indemnity from the time charterer only upon a showing that either the direct or statutorily imputed negligence or other fault of the charterer caused the damage, as discussed *supra.*[6] However, such a restricted reading seems unjustified.

What seems more likely is that, as between the ship owner and the charterer, clause 8 of the time charter agreement shifts responsibility for loading, stowage, trimming, and discharge of cargo to the charterer, and the charterer must indemnify the ship owner for cargo damage which results from any improper performance of any of the stipulated cargo operations. In this view, the duty to perform the cargo

---

3. *See,* generally, Restatement (Second) of Agency §§ 2, 216, 243 (1958).

4. 46 U.S.C. §§ 1300 *et seq.* Section 3(2) of COGSA, 46 U.S.C. § 1303(2) provides that "[t]he carrier shall properly and carefully load, handle, stow, carry, keep, care for, and discharge the goods carried." In the circumstances of the *Nichimen* case, the term "carrier" referred to the charterer. 46 U.S.C. § 1301(a).

5. Based upon the record in the District Court, the Court of Appeals found that the loading and stowing of the vessel was done by the stevedores under the supervision of the Master and the Chief Mate, rather than under the supervision of the charterer's agent. 461 F.2d at 1018.

6. Assuming, of course, that the cargo damage is not due to some independent fault of the ship owner.

operations carries with it an absolute obligation to indemnify the owner for any such damage, irrespective of any "fault" on the part of the charterer, and irrespective of the relationship, under agency law, between the charterer and the party which it employs to carry out its duties under the time charter agreement.

The court is persuaded that the latter is the correct view. As Judge Friendly said in *Nichimen*, ". . . to some extent clause 8 [of the time charter agreement] shifts responsibility for stowage to the charterer; the difficult question is how far." 462 F.2d at 331. The comment applies as well to the responsibility for discharge. As between the ship owner and the charterer, it seems both a reasonable and fair construction of this clause to require indemnity from the charterer for cargo damage, as discussed above. Since the charterer is "primarily responsible" for stowage and discharge, and since the ship captain's supervisory role is reduced to that of vetoing any plan which would imperil the seaworthiness of the ship, it would seem unfair to later predicate indemnity *only* upon a direct showing of negligence by the charterer (who would, presumably, hire a reputable stevedore to do the loading or discharge), or to allow the charterer to argue that it should not be held liable for the negligence of the stevedore, because the stevedore might be technically an independent contractor under the laws of the agency.

Both *Nichimen* and *Demsey* were, of course, cargo damage cases, not personal injury cases, and the charterer here vigorously urges that its liability to indemnify the ship owner not be extended to such cases, absent some showing of direct or imputable negligence or other fault on its part. In support of its position, Isco cites several cases, all of which ante-dated *Nichimen* and *Demsey*, and only a few of which dealt with the effect of clause 8 of the time charter agreement in the context of possible liability for a longshoreman's injuries.

*Bergan v. International Freighting Corp. et ano.*, 254 F.2d 231 (2d Cir. 1958) involved a direct suit by an injured seaman against a time charterer under the Jones Act, and merely held that plaintiff was not an "employee" of the defendant charterer, as required for his recovery. There was no discussion of the effect, if any, of clause 8 of the time charter agreement in that case. Neither was there any such discussion in *Guzman v. Pichirilo*, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962).

*Saridis v. S.S. Paramarina et al.*, 216 F.Supp. 794 (E.D.Va.1962); *Wyche v. Egon Oldendorff and States Marine Lines, Inc. et ano.*, 1967 A.M.C. 2062 (E.D.Va.1967); and *Marino v. Booth Steamship Company, Ltd.*, an apparently unreported opinion of endorsement filed on October 28, 1968 by Judge Ryan of this Court, were all suits brought directly against time charterers by longshoremen or seamen on theories of negligence or unseaworthiness.

In the court's view, these cases are inapposite here for two reasons. In the first place, to the extent that they considered the effect of clause 8 of the time charter agreement on the issue of loading and stowage, they held that it did not relieve the ship owner of the responsibility for doing the actual loading and stowage. *Wyche, supra,* at 2063; *Marino, supra,* at 3. This reading has not survived *Nichimen* and *Demsey.* Secondly, none of these cases considered the specific question whether, if recovery be had against the ship owner, he is entitled to indemnity from the charterer on the theory that it breached its obligations under the time charter agreement.

The only case cited by the charterer here which specifically considered that question is *Mondella v. S.S. Elie V et al.*, 223 F.Supp. 390 (S.D.N.Y.1963), in which the ship owner, sued by a longshoreman for injuries sustained during cargo discharge operations, sought indemnification from the time charterer, on the theory that the charterer agreed to perform all stevedoring operations aboard the vessel "and by law impliedly warranted the proper performance of the stevedoring operations." The owner also argued that control of the relevant parts of the ship had been turned over to the charterer in connection with the stevedoring

operations, and that any injuries were due to negligence or unseaworthiness created by the charterer or its agents, servants, or employees. 223 F.Supp. at 391.

In the view of this court, the *Mondella* case, in denying the ship owner indemnity, no longer correctly represents the law of this Circuit. *Mondella* held that "[n]one of the provisions of the time charter . . . are at variance with the principles that are usually applicable between time charterer and shipowner." Specifically, the court held that "[t]he loading and discharge of cargo is . . . the shipowner's responsibility . . . and the responsibility does not shift simply because the time charterer may appoint the stevedore." 223 F.Supp. at 392. Construing clause 8 of the time charter agreement, the court said that "[t]his paragraph does not . . . . shift the responsibility for stevedoring operations, or the control of the ship or any portion thereof, to [the time charterer]. Indeed, it expressly provides that cargo operations are to be under the Captain's supervision. [The charterer's] agreement to pay for the cargo operations does not make it responsible for the conduct of those operations." *Id.*

It seems clear to this court that, as construed by the Court of Appeals in *Nichimen*, clause 8 shifts primary responsibility for the active control of cargo operations to the charterer and, thus, that the basic assumption on which *Mondella* denied indemnity is no longer valid. Moreover, where, as in this case, the finding of unseaworthiness against the ship owner is, in fact, predicated upon unsafe conditions created by stevedore and shipper[7] rather than upon any conditions created by the ship owner, there seems to be no basis in equity for denying indemnity from the charterer, when the ship's captain retained such limited responsibility for cargo operations under the charter agreement.

■ Accordingly, the court holds that Isco is bound to indemnify Chios from its liability to plaintiff, including costs and attorneys' fees, since Isco impliedly warrant-

ed in clause 8 that it would safely and properly carry out all stevedoring operations.

■ Since the jury also found that the stevedore breached its warranty of workmanlike performance, and since that warranty ran in favor of the ship owner, *Demsey & Associates, Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972), Chios is entitled to judgment against Maher also. Finally, Chios may recover against Castle & Cook upon the jury's findings.

■ In the circumstances of this case, Isco is entitled to recover, in turn, on its cross-claims for indemnification from Maher and Castle & Cook, in accordance with the jury's answers. There was clearly no evidence of conduct by Isco such as to preclude recovery.

The preceding discussion of Isco's liability to Chios disposes of Isco's counterclaim against Chios, in which it asserts that it was the ship owner who was ultimately responsible for cargo operations and supervision of the stevedores. In fact, the time charter agreement shifted that primary responsibility to the charterer.

■ Maher's contention that Chios was guilty of conduct sufficient to preclude indemnity finds no support in the evidence sufficient to meet the test in this Circuit, i. e., that the ship owner's fault "must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job. Merely concurrent fault is not enough." *Albanese v. N.V. Nederl. Amerik Stoomv. Maats.*, 346 F.2d 481, 484 (2d Cir.), *rev'd on other grounds*, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). Moreover, there was no showing at trial that the ship owner in any way interfered with the stevedoring operations, created any hazardous conditions in connection therewith, or failed to provide a vessel reasonably free from peril. Thus, Maher's counterclaim against Chios on those grounds must fail.

---

**7.** As revealed by the jury's answers to special questions.

**828**

■ There are two reasons why Maher's cross-claim against Isco, based upon the latter's alleged failure to properly inspect the pallets of pineapple brought abroad the vessel, must fail. In the first place, the jury found that the defect in the pallet was a latent defect which, by definition, could not have been discovered by the most meticulous inspection. Secondly, while the charterer (as between itself and the ship owner) was primarily liable for cargo operations, the stevedore assumed the responsibility of checking each pallet for safety when it undertook the cargo operations. Such inspection was necessitated by the warranty of workmanlike performance which it impliedly made to Isco.

■ Maher is not entitled to a total indemnity on its cross-claim against Castle & Cook, in view of the jury's finding that it had itself breached its warranty of workmanlike performance in that Maher failed to properly supervise and direct its employees in the unloading operation and to provide for the safety of its employees.

■ Castle & Cook is not entitled to indemnity from any party, although it will be jointly liable with Maher for the amount of the judgment, in view of the jury's findings. Its cross-claim against Isco on the basis of broad allegations of negligence is without evidentiary foundation. Thus, no question of Isco's negligence was sent to the jury.

■ Finally, Castle & Cook filed a counterclaim against Chios on the basis of negligence and also breach of a contractual undertaking to provide a seaworthy ship and proper cargo handling operations. These allegations may be briefly disposed of. In the first place, there was no showing of any negligence by Chios and, consequently, no question of its negligence went to the jury. Secondly, the jury's finding of unseaworthiness was due, at least in part, to Castle & Cook's own negligence and use of a defective pallet. Thirdly, there was no proof at trial of any contractual undertaking by Chios to provide stevedoring services.

Judgment is accordingly entered simultaneously herewith.