Marion Carl MIGUT and Margaret D. Migut, Plaintiffs,

Astrobrillo Compania Naviera, S. A., Defendant-Appellee, Cross-Appellant,

v.

HYMAN–MICHAELS COMPANY, Defendant-Appellant, Cross-Appellee.

Nos. 76–2046, 76–2047.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 5, 1977.

Decided March 3, 1978.
Rehearing Denied April 7, 1978.

Donald J. Miller, Helm, Schumann & Miller, Detroit, Mich., for defendant-appellant.

John L. Foster, Foster, Meadows & Ballard, Detroit, Mich., for plaintiffs.

Before PHILLIPS, Chief Judge, LIVELY, Circuit Judge, and NEESE,[*] District Judge.

LIVELY, Circuit Judge.

The question to be decided on this appeal is whether the owner of a vessel or its time charterer is ultimately liable for damages to the estate of a longshoreman who was fatally injured during loading operations. Frankie Lee Migut, age 17, who had worked as a longshoreman for two days, died from injuries received when he fell through a partially uncovered hatch in the 'tween deck of the Steamship Ionic and into the hold below. His estate sued the vessel and its owner, Astrobrillo Compania Naviera, S. A. (owner), the time charterer, Hyman-Michaels Company (charterer), an agent of the charterer and the stevedore who employed Migut, Wickes Marine Terminal (stevedore). The charterer's agent and the stevedore were dismissed. The owner and the charterer filed cross-claims against each other seeking indemnification for any amounts either might be required to pay the plaintiff's estate.

After some discovery the owner settled with the plaintiff's estate for $30,000 and a consent judgment was entered against the owner and satisfied. The owner and charterer stipulated that the owner was potentially liable and that the settlement was reasonable. The owner then filed a motion for summary judgment on its cross claim, seeking the $30,000 paid in settlement plus attorneys' fees and expenses. The charterer filed a motion for summary judgment seeking its attorneys' fees and expenses. All facts were stipulated. The district court granted the owner's motion and entered judgment against the charterer for $30,000 with interest, $7,000 attorneys' fees and the costs of the indemnification proceedings. The charterer appealed, and the owner cross-appealed, contending the district court erred in reducing its request for $14,000 attorneys' fees and failing to award actual expenses incurred in defending the Migut action.

On appeal it is stipulated that the hatch through which Migut fell was partially uncovered when the Ionic arrived in Bay City, Michigan, where the accident occurred. The stevedore's superintendent became aware of this condition prior to the accident. The accident occurred when a load of empty pallets being lifted from the hold by a winch tipped toward Migut, who stepped backward into the open hatch. It was not shown whether the load tipped because it was improperly secured or if the winch operator handled it carelessly. Though some crew members were engaged in the loading operations, they were working for the stevedore under an agreement which provided that their services to the stevedore were "without any responsibility to the vessel's owners."

The district court granted indemnification to the owner upon a finding that the parties had shifted all responsibility for loading and stowing cargo to the charterer by inclusion of clause 8 of the New York Produce Exchange form in their time charter agreement. Clause 8 provides, in pertinent part:

. . . The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim and discharge the cargo at their expense under the supervision of the Captain who is to sign Bills of Lading for cargo as presented, in conformity with mate's and/or Tally Clerk's receipts.

---

[*] The Honorable C. G. Neese, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation.

The following conclusions of law were contained in the district court's memorandum opinion:

> The charter party clearly contemplates that the Captain be made an agent of the charterer when loading and stowing cargo. Also, it is clearly expressed in the contract that the charterer would assume the responsibility for loading and stowing the cargo which is traditionally a duty of the owner. *Nichimen Co. Inc. v. M V Farland,* 462 F.2d 319, 330–332 (C.A.2, 1972).
>
> This assumption of responsibility by the charterer is as it should be for the loading and unloading of cargo is the enterprise of the charterer and is an activity relating to the cargo-carrying capacity of the vessel and not its structural stability or its navigation. The persons engaged in the cargo loading operation are charterer's men employed doing charterer's work.
>
> \*   \*   \*   \*   \*   \*
>
> In this case the charterer and its designated stevedore had operational control over the loading process. With such control the charterer must indemnify the passive owner for any liability that may be imposed upon it by operation of law. *Wellington Transportation Co. v. United States,* 481 F.2d 108 (C.A.6, 1973).

On appeal the charterer argues that the district court read clause 8 much too broadly. It contends that clause 8 shifts to the charterer only the obligation to arrange for loading and stowing cargo and to pay for these operations, but that operational control remains with the shipowner. The charterer points out that it had no employees aboard the Ionic and that the owner has stipulated that the charterer was not negligent in selecting Wickes as stevedore. It argues that a time charterer may be held liable for injuries to a longshoreman only if it has assumed operational control of the cargo handling and its negligence causes the injury. Principal support for this position is found in *D/S Ove Skou v. Hebert,* 365 F.2d 341 (5th Cir. 1966), *cert. denied,* 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970), where the court held that clause 8 did not permit a shipowner to shift liability to a time charterer for injuries to a longshoreman caused by a defective hatch cover. The court found that clause 8 makes a charterer responsible for the costs of certain activities, including cargo handling, but does not transfer operational responsibility from the owner. Circumstances sufficient to give rise to liability for actions taken by an independent contractor would be required to render a time charterer liable under clause 8. *Id.,* 365 F.2d at 351.

The owner contends that under a time charter the captain of a ship acts as agent of the charterer when engaged in "employment" of the vessel and as agent of the owner when engaged in "control, command and navigation" of the ship. It is the owner's position that with regard to the stowage of cargo generally the captain acts for the charterer, and only if he acts with regard to cargo in matters affecting the safety of the ship and its ability to withstand perils of the sea does he do so as agent of the owner. The owner relies primarily upon *Nichimen Company v. M. V. Farland,* cited in the memorandum opinion of the district court, *supra,* and *Fernandez v. Chios Shipping Co., Ltd.,* 542 F.2d 145 (2d Cir. 1976). In *Nichimen* the court held a charterer liable to the shipowner for damages to improperly stowed cargo which shifted at sea. Clause 8 was construed to shift "prime responsibility" to the charterer for loading and stowing. The qualification that this work shall be done "under the supervision of the captain" was held to apply to the master's right to veto any stowage plan that would imperil the vessel, and not to impose a duty to supervise loading and stowing as agent of the owner. 462 F.2d at 332. In *Fernandez, supra,* the *Nichimen* rule was extended to include damages for injuries to longshoremen as well as cargo damage. The court stated:

> When Clause 8 shifts the responsibility of proper discharge of cargo to the charterer, that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel

unloading it. (footnote omitted) 542 F.2d at 152.

Under a time charter the charterer engages either the entire vessel or a designated portion of the cargo area for a stated term. Possession and control remain with the owner and the ship is operated by its regular crew, but the charterer determines the ship's routes and destinations. Clause 8 clearly makes the captain an agent of the charterer for some purposes. We have concluded that it is not necessary for us to determine in the present case whether or not clause 8 placed operational responsibility for loading and stowing upon the charterer. For reasons hereafter set forth we have determined that the liability which was extinguished by the owner's settlement with the Migut estate resulted from acts or omissions of the captain which were not connected to cargo handling.

Regardless of the extent to which the sharing between the owner and charterer of the captain's supervision may have shifted responsibility prior to enactment of the Longshoremen's and Harbor Workers Compensation Act (LHWCA) Amendments of 1972, 33 U.S.C. §§ 901 et seq. (1970 Supp. II), we believe the decision of this case is affected by the amendments. The 1972 amendments were effective November 26, 1972, two days prior to the fatal accident aboard the Ionic. Section 905 [1] effected a major change in the relationships between shipowners, stevedores and longshoremen. For an excellent discussion of these changes see *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). In § 905(a) Congress again made the compensation claim of a longshoreman his exclusive remedy against his employer, the stevedore. Section 905(b) eliminated third party actions by a longshoreman against the vessel on which injury occurs based on the shipowner's warranty of seaworthiness, a right of action which was sanctioned by the Supreme Court in *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Also eliminated was the right of a vessel to recover indemnity from the stevedore for damages paid the injured longshoreman, as permitted in *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

These changes in the 1927 LHWCA were balanced by other provisions which greatly increased compensation benefits for shore-based maritime workers and the creation of a new third party cause of action by an injured worker against the vessel. This

1. § 905 as amended reads:

§ 905. Exclusiveness of liability.

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

action, however, is based solely on negligence of the vessel rather than on the absolute liability concept of seaworthiness, and the vessel in turn is relieved of liability for negligence of persons engaged in providing stevedoring services.

Under § 905(b) the owners could have been liable to the Migut estate only for negligence of the vessel. This negligence must have consisted of an act or omission which would render a land-based possessor of premises liable under similar circumstances. See *Munoz v. Flota Merchante Grancolombiana, S.A.,* 553 F.2d 837, 840 (2d Cir. 1977). The potential liability of the owner to the estate presumably was based on failure to furnish Migut a safe place to work because of the partially uncovered hatch in the area where the longshoremen were required to work. See *Federal Marine Terminals v. Burnside Shipping Co.,* 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969); *Napoli v. Hellenic Lines,* 536 F.2d 505 (2d Cir. 1976); *Bess v. Agromar Line,* 518 F.2d 738 (4th Cir. 1975). The record before us discloses no other suggestion of negligence of the vessel, and the settlement forecloses further inquiry. Pinpointing the basis of potential liability does not determine the issue in this case, however. Section 902(21) of the amended LHWCA defines "vessel" to include any vessel where a person suffers injury or death and the vessel's owner or charterer. Thus "negligence of the vessel" could describe an act or omission of either the owner or a time charterer.

The record discloses no purpose of the charterer which was served by the partially uncovered hatch. This was a condition which existed when the Ionic first docked at Bay City and before any cargo handling began. Even if clause 8 is intended to shift operational control of, and responsibility for, all loading and stowing to the charterer, we do not believe it would have the same effect with respect to injuries resulting from a condition which existed before those activities began. In *Nichimen* the court recognized this limitation on its construction of clause 8, stating:

If cargo damages were to occur because of some defect in the vessel which the Captain had failed to discover and correct, primary liability would rest with the owner; the cause of the damage would not be within the scope of the responsibilities which clause 8 was intended to shift from the owner to the charterer. 462 F.2d at 332.

We do not believe that the parties intended to make the charterer liable for negligence of the captain in permitting and failing to correct a dangerous condition on board the ship which existed prior to the commencement of the loading operations during which the longshoreman was injured.

There was some evidence of negligence by the stevedore, and it was stipulated that the stevedore's superintendent was aware of the condition of the hatch into which Migut fell. If there had been a trial the possibility existed that a trier of fact might have found that the sole proximate cause of Migut's fatal injury was negligence of the stevedore. This would have precluded recovery from the owner, § 905(b), *Riddle v. Exxon Transportation Co.,* 563 F.2d 1103, 1115 (4th Cir. 1977), and would have eliminated any question of indemnification. Nevertheless, as the case reaches us we must infer that the owner settled the Migut claim to extinguish liability for its own negligence which consisted of failure to furnish a reasonably safe place to work. Responsibility for this failure was not shifted to the charterer under clause 8.

Though the 1972 amendments to LHWCA were brought to the attention of the district court it does not appear that their application to the present case was fully explored by the parties.

The judgment of the district court is reversed on appeal and cross-appeal. The cause is remanded with directions to dismiss the cross-claim of the owners and to consider the cross-claim of the charterer for attorneys' fees and expenses in the light of *Wellington Transportation Co. v. United States,* 481 F.2d 108 (6th Cir. 1973).