William DOUGHERTY

v.

NAVIGAZIONE SAN PAOLO, S.P.A.
MEDAFRICA LINE

and

Alcoa Maritime Co., Ltd.

Civ. A. No. 82–5518.

United States District Court,
E.D. Pennsylvania.

May 4, 1984.

Charles Sovel, Freedman Borowsky &
Lorry, Philadelphia, Pa., for plaintiff.

Raymond T. Letulle, Krusen, Evans &
Byrne, Philadelphia, Pa., for Alcoa.

Robert B. White, Jr., Douglas Riblet,
Rawle & Henderson, Philadelphia, for Na-
vigazione San Paolo et al.

MEMORANDUM OPINION
AND ORDER

VanARTSDALEN, District Judge.

Plaintiff, a longshoreman, has brought
this action seeking to recover damages for
alleged personal injuries suffered while
working aboard the ship M/V Hektor.
Named as defendants are the vessel's own-
er, Alcoa Maritime Co., Ltd. (Alcoa) and the
time charterer, Navigazione San Paolo,
S.P.A. Medafrica Line (Medafrica Line).
Alcoa has filed a cross claim against Me-
dafrica Line which has been stayed pending
arbitration. *Dougherty v. Navigazione
San Paolo, S.P.A.*, No. 82–5518 (Jan. 9,
1984). Medafrica Line has now moved for
summary judgment against plaintiff.

Medafrica Line, in support of its motion,
asserts that the Time Charter Party (Char-
ter Party) provides that the owner and not
the charterer is to remain responsible for
the vessel. Therefore, Medafrica Line con-
tends it owed no duty to plaintiff and can-
not be held liable for negligence. The

clause that Medafrica Line relies upon, clause 26, provides:

> Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owner is to remain responsible for the navigation of the vessel, insurance, acts of pilots and tugs [sic] boats and cargo claims, crew and all other matters, same as when trading for their own account.

Plaintiff and defendant Alcoa oppose the motion for summary judgment. Both contend there is an issue of material fact whether Medafrica Line, the time charterer, breached a duty owed to plaintiff; such duty arising from the terms of clause 8 of the Charter Party. Clause 8 provides:

> That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charters as regards employment and agency; and Charters are to load, stow and discharge and trim the cargo at their expense under the supervision of the Captain.

Plaintiff and Alcoa contend that the alleged breach of duty by Medafrica Line to plaintiff arises out of this agreement. Plaintiff, in his memorandum, asserts that "to the extent ... that a charter party grants certain authority to the charterer with respect to cargo operations, *and the charterer, in fact, exercises this authority,* the charterer is under a duty to exercise reasonable care to third parties, including longshoremen, with respect to the manner in which it exercises this authority." Plaintiff's Answer to Motion For Summary Judgment at 4 (emphasis in original).

*Discussion*

It is fundamental that in deciding a motion for summary judgment all reasonable inferences must be accorded the party against whom the motion is made. *Bryson v. Brand Insulation, Inc.,* 621 F.2d 556, 559 (3d Cir.1980). The summary judgment standard is well known—relief is appropriate if "there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The problem presented by this case is whether a longshoreman may maintain an action under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901–950, against the time charterer. What appears to be a relatively straightforward problem becomes complex because of an ambiguity in the statute that several authorities have concluded was a mistake in the wording.

Jurisdiction is alleged under 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1332 (Diversity of Citizenship). Although not expressly alleged in the complaint, federal question jurisdiction can be founded only on the LHWCA, which grants a remedy against the "vessel" to a longshoreman who is injured at work. The remedy provided to the longshoreman under LHWCA against the vessel, as defined in the statute, is the longshoreman's exclusive remedy against the vessel. *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 40 (3d Cir.1975). Section 905(b) of Title 33, United States Code, provides in relevant part as follows:

> In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person ... may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title.... The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

A vessel is defined in LHWCA as follows:

> The term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, *charter or bareboat charterer,* master, officer, or crew member.

33 U.S.C. § 902(21) (emphasis added).

Clearly, under the statute, plaintiff longshoreman may maintain an action against

the defendant Alcoa, as owner of the vessel. The issue is whether plaintiff may maintain an action against the defendant, Medafrica Line, who was a time charterer and not a demise or bareboat charterer. As set forth above, the statutory definition of a "vessel" does not expressly include the term "time charterer," although it does include the phrase "charter or bareboat charterer." Do these words include or exclude a time charterer?

It does not appear that the Third Circuit Court of Appeals has addressed this specific question. At least three other circuit courts of appeals have directly held that section 905(b) of the LHWCA applies to time charterers. *Turner v. Japan Lines, Ltd.*, 651 F.2d 1300, 1304 (9th Cir.1981); *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236, 242 n. 5 (5th Cir.1981); *Migut v. Hyman-Michaels Co.*, 571 F.2d 352, 356 (6th Cir.1978). While I have decided to follow these cases, I feel compelled to point out a potentially troublesome problem which heretofore has not been fully explored.

The crux of the problem lies in the phrase "charter or bareboat charterer" in the definition of the term "vessel" in section 902(21). The initial difficulty with the phrase is the use of the term "charter." All of the other relevant terms in section 902(21) refer to individuals ("... and said vessel's owner, owner pro hac vice, agent operator ... master, officer, or crew"). The term "charter" is ordinarily meant to be the charter party; that is the contract between the owner and the charterer. Thus, as written in the statute, the word "charter" appears to be a mistake. This conclusion is confirmed by at least one circuit court and one influential admiralty treatise. The ninth circuit in *Turner* and Professors Gilmore and Black in their treatise both include the notation "[sic]" after the term "charter" when citing the LHWCA. *Turner*, 651 F.2d at 1303; G. Gilmore and C. Black, *The Law of Admiralty* 450 (2d ed. 1975). The court in *Turner* evidently believed the term "charter" should have been "charterer." This is probably the interpretation given the term

"charter" by both the *Mallard* and *Migut* courts as well.

Although courts that have faced the ambiguity have apparently construed the word "charter" as set forth in the statute to mean "charterer," this construction creates its own ambiguity. The term "charterer" includes the various types recognized in the law such as a "time charterer," a "voyage charterer" and a "bareboat or demise charterer." If Congress, in adopting the wording "charter or bareboat charterer" meant "charterer or bareboat charterer," the ambiguity is apparent. If "charterer" was intended to include all types of charterers including a time charterer and a bareboat charterer, why add the unnecessary words "or bareboat charterer"? If Congress intended to limit its application to bareboat charterers, the word "charter" or "charterer" adds only uncertainty as to the meaning. It is possible, of course, to conclude that the word "or" was intended to make the word "charter" synonymous with the words "bareboat charterer."

Under general maritime principles, there are three types of charter parties: the voyage charter, the time charter, and the demise or bareboat charter. In a voyage charter the ship is engaged to carry a full cargo on a single voyage. The owner retains all control over the vessel. In a time charter the ship's carrying capacity is taken by the charterer for a fixed time for the carriage of goods on as many voyages as can fit into the charter period. Again, the owner retains all control for management and navigation. In a demise or bareboat charter, the charterer takes over full control of the ship and becomes the owner pro hac vice. The charterer thus assumes control of management and navigation. *See generally,* G. Gilmore and C. Black, *The Law of Admiralty* 193–94 (2d ed. 1975).

It is well settled under admiralty law that absent an agreement to the contrary the time charterer has no control over the vessel and assumes no liability for negli-

4

gence of the crew or unseaworthiness of the vessel. *Mallard*, 634 F.2d at 242 n. 5; *Habrat v. United States*, 310 F.Supp. 618 (W.D.Pa.1970). Control over the vessel distinguishes the demise or bareboat charter from the others:

> The first problem is of course distinguishing the demise from the regular time and voyage charters. The test is one of "control"; if the owner retains control over the vessel, merely carrying the goods furnished or designated by the charter, the charter is not a demise; if control of the vessel itself is surrendered to the charterer, so that the master is his man and the ship's people are his people, then we have to do with a demise.

G. Gilmore and C. Black, *The Law of Admiralty* 240 (2d ed. 1975).

Because the phrase "charter or bareboat charterer" in the statute is ambiguous, reference to the other terms included in the definition and the legislative history are appropriate. The other terms included in the statutory definition of "vessel" involve parties who have some measure of control over the vessel (". . . and said vessel's owner, owner pro hac vice, agent, operator ... master, officer or crew"). The legislative history states, in part:

> Vessel would be classified as any vessel upon which or in connection with which any person entitled to benefits suffers injury and including the vessel owner and *others responsible for the operation of the vessel.*

H.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.CODE CONG. & AD. NEWS 4698, 4719 (emphasis added). Time charterers ordinarily are not responsible for the control or operation of the vessel under general maritime law. Consequently, based on the legislative history noted above, it may be that the phrase "charter or bareboat charterer" was not intended to include or apply to time charterers. This construction would explain the specific reference to "bareboat charterers" because under general maritime principles, they were responsible for control and operation of the vessel. Thus, the construction given

to the phrase "charter or bareboat charterer" could be "demise or bareboat charterer."

■ The reason I have decided to follow those courts that have determined the LHWCA includes suits against the vessel's time charterer despite the logical difficulties, is Congress' expressed intention of providing relief to injured harbor workers. "Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work." H.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. CODE CONG. & AD.NEWS 4698, 4704. Even though the time charterer does not normally assume control over the operation of the vessel the time charterer is involved in the loading and unloading of cargo. Thus, it is entirely consistent with the purpose of the LHWCA to allow third party actions against the time charterer because the time charterer could possibly make those areas used in the storing of cargo safer.

This determination is separate from any agreement between the owner and the time charterer in the Charter Party that may assign the ultimate risk of loss between them. That the time charterer is involved in the storing of the cargo is, in my view, enough to hold the charterer answerable under the LHWCA to workers for any negligence of the time charterer.

Another reason for holding that time charterers may be sued under the LHWCA is to prevent circuity of actions and possibly inconsistent jury verdicts. If time charterers could not be sued under the LHWCA, the plaintiff could nevertheless probably maintain a nonstatutory, common-law negligence action against the time charterer in state court or, if diversity jurisdiction existed, in federal court. In such an action the alleged duty on the part of the time charterer would arise from the Charter Party, not from the LHWCA. By holding that only the vessel's owner may be found liable under the LHWCA, this

court would, in effect force the plaintiff to bring a separate action against the time charterer. This creates a situation where the owner could defend his suit by arguing that under the Charter Party, the time charterer was responsible, which the jury might accept. However, not being in the case, the time charterer could not be held liable. In a separate action against the time charterer, the time charterer could argue that the owner was responsible to the plaintiff under the Charter Party. If the jury agreed, the plaintiff would again have no remedy because the owner would not be in the case. Given the purpose of the LHWCA, Congress could not have intended that the terms of a Charter Party could potentially leave harbor workers remediless. I have, therefore, concluded that the LHWCA applies to time charterers.

The LHWCA, as set out above in section 905(b), provides a cause of action against the vessel (as defined by section 902(21)) if the injury is a result of the negligence of the vessel. Although not articulated, it appears that placed in the context of the LHWCA, Medafrica Line's contention is that it cannot possibly have been negligent to plaintiff because it owed no duty to plaintiff. This assertion is based upon Medafrica Line's claim that clause 26 of the Charter Party provides that the owner and not the time charterer is to remain responsible for the vessel. Medafrica Line's argument misperceives the very purpose of the LHWCA. What Medafrica Line is seeking by this summary judgment motion is a determination that as between it and Alcoa, because of the contract between them, Alcoa is liable. Such a claim is a contractual indemnity claim. Because of the January 9, 1984 Order staying the parties' cross claims pending arbitration, Medafrica Line's claim for indemnity is not properly before this court. Rather, it should be presented through the arbitration mechanism called for by the Charter Party.

The LHWCA is intended to provide longshoremen and harbor workers with workmen's compensation benefits without depriving them of the right to sue negligent third parties for injuries, or eliminating the incentive for third parties to provide longshoremen a safe place to work. To prevent indirect recovery from the employer, the 1972 amendments to the LHWCA prohibit the employer from having to indemnify third parties for damages recovered by employees. The *Turner* court has explained that imposing a duty on the owner or time charterer or both should further the congressional goal of safety. I have already set out my agreement with this position. Thus, the duty that Medafrica Line owed to plaintiff did not arise from clause 8 of the Charter Party, as plaintiff and Alcoa contend. The duty arose by operation of the LHWCA. The LHWCA itself provides a cause of action against negligent third parties.

The clause in the Charter Party that plaintiff and Alcoa cite would only serve to transfer ultimate liability from one defendant to the other in accordance with their contract. It cannot affect in any way plaintiff's rights under the LHWCA, one of those being the right to bring a third party cause of action for negligence against the vessel, as that term is defined in the statute. I have determined that "vessel" includes the time charterer. Whether plaintiff can ultimately prove that the owner or time charterer or both was or were negligent is another matter. Whether the owner or time charterer will ultimately bear the risk of loss due to a contractual agreement between them is also another matter; one proper for arbitration by the very terms of the agreement between them.

The motion for summary judgment will be denied.