Sylvester HAYES and Mamie Lue
Hayes, his wife,
Plaintiffs-Appellants,

v.

WILH WILHELMSEN ENTERPRISES,
LTD., a foreign business corporation,
Defendant,

Nissan Motor Car Carrier Co., Ltd., a
foreign business corporation,
Defendant-Appellee,

"Partrederieni Takara", a foreign
business organization, Defendant.

No. 86–3004.

United States Court of Appeals,
Eleventh Circuit.

June 12, 1987.

Gregory W. Johnson, Richard G. Rumrell, Rumrell & Vlcek, Jacksonville, Fla., for plaintiffs-appellants.

George D. Gabel, Jr., Wahl & Gabel, J. Carol McDonald, Jacksonville, Fla., Kirlin, Campbell & Keating, Mark F. Muller, New York City, for defendant-appellee.

Before TJOFLAT and HATCHETT,
Circuit Judges, EATON *, District Judge.

* Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by · designation.

PER CURIAM:

Appellants, Sylvester and Mamie Lue Hayes, appeal the district court's granting of summary judgment in favor of appellee, Nissan Motor Car Carrier Co., Ltd. (Nissan), on their claim for injuries Sylvester Hayes incurred resulting from an accident aboard a vessel Nissan time chartered. 622 F.Supp. 1554. We affirm.

## Facts

The M/V TAKARA is owned by Partrederieni Takara, managed by Wilh Wilhelmsen Enterprises, Ltd., and at the time of the accident, was time chartered by Nissan. On July 5, 1979, the day of the injury, the M/V TAKARA docked at Jacksonville, Florida, at 1:20 a.m. The doors of the vessel were opened by 1:30 a.m., and longshoremen employed to unload the vehicles aboard began entering the vessel about 8 a.m. Sylvester Hayes slipped on hydraulic fluid which was located on the entry deck of the vessel just inside the door. The fluid had leaked from the hoses of the hydraulically-operated cargo doors of the vessel, and not from the vehicles being unloaded. The Hayeses brought suit against the owners, the manager, and the time charterer—Sylvester Hayes for the injuries he sustained, and Mamie Lue Hayes, his wife, for loss of consortium. The Hayeses entered into a settlement agreement with the owner and the manager; thus, Nissan, the time charterer, remains the only party to this lawsuit.

The district court granted Nissan's motion for summary judgment, and this appeal followed. For purposes of our review, we assume, as did the district court and the parties, that the fluid leaked from the hoses when the cargo doors were opened, and it was on the deck prior to the longshoremen boarding the vessel.

## Discussion

The 1972 amendments to the Longshoremen and Harbor Workers' Compensation Act provide a right of action to longshoremen injured due to negligence of a vessel.

33 U.S.C.A. § 905(b) (West 1986). The term "vessel" includes the vessel's owner as well as the time charterer. 33 U.S.C. § 902(21); see also Mallard v. Aluminum Co. of Canada, Ltd., 634 F.2d 236, 242 n. 5 (5th Cir.), cert. denied, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). For the purposes of summary judgment, the parties stipulated to facts which constitute negligence on the part of the Master and crew for failure to warn the longshoremen of the fluid on the deck, or to remove the fluid. Nissan is answerable for Hayes's injuries under 33 U.S.C. § 905(b) only if negligence against it can be separately established. Haluapo v. Akashi Kaiun, K.K., 748 F.2d 1363, 1365 n. 2 (9th Cir. 1984). The dispositive issue, therefore, is whether the negligence of the Master and crew is attributable to Nissan.

Clause 8 of the charter party provides: That the Captain shall prosecute his voyage with the utmost dispatch, and shall render all customary assistance with the ship's crew and boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and agency; and Charterers are to load, stow, trim, lash, unlash, and discharge the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for cargo as presented, in conformity with Mate's or Tally's Clerk receipts.

The Second Circuit had occasion to interpret the legal significance of an identical clause 8 of a charter party in Fernandez v. Chios Shipping Co., Ltd., 542 F.2d 145 (2d Cir.1976). In Fernandez, a longshoreman was injured when a pallet, which was used to unload cargo, came apart spilling cargo on him. The court declared, "[w]hen Clause 8 shifts the responsibility of proper discharge of cargo to the charterer, that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it." 542 F.2d at 152. The court then found that the injury was caused by improper discharge of cargo, and it held the time

charterer liable to indemnify the owner pursuant to clause 8.

Under a virtually identical clause 8, the Sixth Circuit distinguished *Fernandez* in a case in which a longshoreman died when he fell through an open hatch during loading operations. *Migut v. Hyman-Michaels Co.*, 571 F.2d 352 (6th Cir.1978). While not determining "whether or not clause 8 placed operation and responsibility for loading and stowing upon the charterer," the court concluded that the open hatch was a condition that existed prior to cargo unloading and that the partially uncovered hatch served no purpose of the charterer. Therefore, the court concluded the liability "resulted from acts or omissions of the captain which were not connected to cargo handling," and that the charterer was entitled to indemnity from the owner. 571 F.2d at 355.

■■■ A time charterer who has no control over a vessel assumes no liability for negligence of the crew or unseaworthiness of the vessel absent an agreement to the contrary. *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236, 242 n. 5 (5th Cir.), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981). In the present case, clause 8 shifts responsibility for cargo operations to Nissan. Specifically, the clause provides that the charterers are responsible for, among other things, the discharge of cargo. The district court, in applying a "cargo-related" standard, determined that Nissan was not responsible for the negligence of the Master and crew. We agree. The cargo doors are part of the vessel's equipment. Maintenance of the cargo doors is not within the scope of responsibility assumed by the time charterer under clause 8.[1] Nissan did not by contract assume responsibility for the seaworthiness of the vessel. In short, the fluid on the deck did not relate to the cargo being carried; thus, the Master and crew were not acting as agents of Nissan when they negligently failed to clean up or warn of the fluid.[2]

■■■ Hayes's contention that the district court erred in not properly considering the testimony of Chief Officer Ringsoey and its expert witness, Robert Stone, a professional stevedore manager, as to whether the crew was acting as agent for Nissan at the

---

1. In its order, the district court correctly stated:

   The Eleventh Circuit, because it adopted the precedent of the former Fifth Circuit, *See Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), may have adopted an interpretation of Clause 8 of the time charter which is inconsistent with that of the courts which hold a time charterer liable for cargo-related personal injuries. In *D/S Ove Skou v. Hebert*, 365 F.2d 341, 351–52 (5th Cir.1966), *cert. denied*, 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970), the court held that clause 8 makes a charterer responsible for the costs of cargo handling, but it does not transfer any operational control from the owner to the charterer. However, this case was decided prior to the 1972 action against, among others, a charterer for negligence. Several lower courts have followed *D/S Ove Skou v. Hebert* even after the 1972 amendments. *See Shaw v. South African Marine Corp. and Burnham Shipping Corp. of Monrovia*, 1983 A.M.C. 1579, 1580 (E.D.Va.1982); Desormeaux v. Oceans International, et al., 1979 A.M.C. 1962, 1964–65 (W.D.La.1979). Recently, the Fifth Circuit in *Mallard v. Aluminum Co. Of Canada, Ltd.*, 634 F.2d 236, 242 n. 5 (5th Cir.1981), declined to overrule *D/S Ove Skou*, stating: "In light of *Skou*, this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect." *Id.* However, in *Mallard*, the court reversed the grant of summary judgment for the time charterer as well as the owner. Thus, it is unclear whether the holding of *D/S Ove Skou* is still good law and binding precedent in this circuit.

   The 1972 amendments, which afford an injured longshoreman a right of action against a charterer for negligence, undercuts the rationale of *D/S Ove Skou v. Hebert*, 365 F.2d 341 (5th Cir.1966). At an appropriate time, the en banc court must address the continued vitality of that case.

2. Other provisions in the time charter support the conclusion that the vessel owner is responsible for the cargo doors. Clause 1 of the time charter provides, in pertinent part: "That the Owners shall ... keep the vessel in a thoroughly efficient state in hull, machinery and equipment...." Clause 48 makes the owner responsible for side parts and ramps used to load and unload vehicles. Clause 65 makes the owner responsible to correct problems of the vessel which delay the longshoremen. Clause 71 provides: "The vessel to be suitable for the carriage of such unboxed cars as Roll On Roll Off pure car carrier. If corrective measures are necessary same are to be performed by the Owners on their time and their expense."

time it should have discovered the spill and as to when "discharge" began is without merit. Clause 8 of the charter party serves to delineate the responsibility of the parties. Interpretation of clause 8 is a question of law and is properly addressed to the trial court. *See Turner v. Japan Lines, Ltd.,* 651 F.2d 1300, 1305–06 (9th Cir.1981), *cert. denied,* 459 U.S. 967, 103 S.Ct. 294, 74 L.Ed.2d 278 (1982) *amended* 702 F.2d 752 (9th Cir.1983). Testimony of the Hayes's two witnesses amount to no more than legal conclusions, and thus raise no question of material fact which would necessitate a denial of summary judgment.

## Conclusion

Under the provisions of the time charter, the owner had assumed responsibility for maintaining the vessel's equipment so that cargo could be loaded and unloaded. Defects in the cargo doors or problems in their operation, which caused fluid to leak, were the responsibility of the owner. Based on the intention of the parties as disclosed in the time charter, the time charterer did not assume responsibility for cleaning up or warning of fluid which leaked from the cargo doors when they were opened. The failure of the Master and crew to properly do so is attributable to the owner of the vessel. For these purposes, the crew was acting as the agents of the owner. The Hayeses have failed to establish an act of negligence on the part of Nissan or negligence attributable to it.

AFFIRMED.

EATON, Senior District Judge, concurring specially:

I concur in the result reached. I feel obliged to write separately, however, to address what I perceive to be a growing confusion in this area of the law—confusion which may be furthered by the main opinion's reliance upon *Fernandez v. Chios Shipping Co., Ltd.,* 542 F.2d 145 (2d Cir. 1976), and its concern over the "continued vitality" of *D/S Ove Skou v. Hebert,* 365 F.2d 341 (5th Cir.1966), *cert. denied,* 400 U.S. 902, 91 S.Ct. 139, 27 L.Ed.2d 139 (1970). To me, the apparent conflict between *Fernandez* and *D/S Ove Skou* with respect to *indemnity* claims between shipowners and time charterers arising out of personal injury claims bottomed upon *unseaworthiness* is insignificant in the straightforward negligence and agency issues presented in this claim by a longshoreman against a time charterer.

## INTERPRETATION OF CLAUSE 8

Since the 1972 amendments to the Longshoremen and Harbor Workers' Compensation Act (hereinafter referred to as "the Act"), less than a dozen reported cases appear in which an injured longshoreman has sued a time charterer in negligence. This area of the law is in its developmental stage.[1]

I believe that during this development courts have tended to give undue deference to Clause 8 of the New York Produce Exchange Time Charter form (hereinafter referred to as "Clause 8"). Some seem to consider Clause 8 to be the controlling factor in a negligence case brought by a longshoreman against a time charterer or a shipowner. More often than not, district courts fail to recognize the distinction between indemnity claims brought by shipowners against time charterers and negligence claims brought by longshoremen against time charterers.[2]

---

1. In *Scindia Steam Navigation Co. v. De Los Santos,* 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981), the Supreme Court delineated the duty owed by a shipowner to a longshoreman. The duty owed by a time charterer to a longshoreman has not been established beyond the duty to exercise reasonable care under the circumstances. Congress left to the federal courts the responsibility to fashion a uniform law of negligence by analogy to common law tort principles.

2. For instance, in *Shaw v. South African Marine,* 1983 A.M.C. 1578 (E.D.Va.1982), plaintiff/longshoreman sued the time charterer. On the time charterer's motion for summary judgment plaintiff/longshoreman's counsel took the position "that clause 8 of the charter party, which makes the time-charterer responsible to load, stow and trim the cargo at its expense, also makes the time-charterer primarily liable for any injury to cargo or longshoremen which results from the improper performance of those

In a time charter-party, the object is to allow both the shipowner and the time charterer to benefit from the vessel's earnings. When the parties include Clause 8 in the charter, they intend to apportion the responsibility for the ship's cargo between them. Thus, Clause 8 serves to transfer *ultimate* liability for judgments resulting from cargo damage from the shipowner to the time charterer, save for judgments resulting from navigation or from the captain's intervention in the cargo handling operations when the intervention is directed toward the seaworthiness and safety of the ship.

The duty owed by the time charterer to the longshoreman does not arise out of Clause 8 of the time charter, however.[3] A longshoreman is in no position to sue a time charterer on the basis of the time charterer's contractual duty to indemnify the shipowner. *Haluapo v. Akashi Kaiun, K.K.,* 748 F.2d 1363 (9th Cir.1984). In short, a longshoreman may prevail against a time charterer in a negligence action if he can establish that the time charterer, itself or through its agents, violated the duty owed by the time charterer *to the longshoreman*—but a contractual obligation the time charterer owes to the shipowner is of no benefit to the longshoreman, save for whatever evidentiary value it may have on an agency question in a given case.

I believe the unintended cause of the apparent confusion is the following statement from *Fernandez,* which extended *Nichimen Company v. M/V Farland,* 462 F.2d 319 (2d Cir.1972) (granting indemnification in a cargo action), to include indemnification growing out of personal injury *unseaworthiness* claims: "When Clause 8 shifts the responsibility of proper discharge of cargo to the charterer, *that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it."* *Fernandez,* 542 F.2d at 152. (Emphasis added). For this language to be clear, it

operations." "Accordingly," the trial judge wrote, "the Court must now determine *whether the language of the contract itself,*" entitles the time charterer to summary judgment. *Id.* at 1580. (Emphasis added). "The issue of whether *the charter party* places the responsibility for a longshoreman's injuries on the owner or time charterer has been construed frequently by the courts," the trial judge wrote. *Id.* (Emphasis added).

In *Warnock v. Daiicha Chou Kisen Kaisha,* 1983 A.M.C. 1463 (D.Or.1981), plaintiff/longshoreman sued the time charterer alleging negligence and personal injury. According to the trial judge, the plaintiff contended that Clause 8 evidenced an intent between the time charterer and the shipowner that the time charterer assumed responsibility for the care of the cargo, "including responsibility for injuries to the longshoreman." *Id.* at 1464. The trial judge cited to language in *Fernandez v. Chios Shipping Co., Ltd.,* 542 F.2d 145: "that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it," and then wrote: "[t]he court *permitted* Fernandez *to recover from the time charterer* damages for injuries sustained." 1983 A.M.C. at 1465. (Emphasis added). The Court also cited to *Camiolo v. Felicitas-Rickmers Line K.G. & Co.,* 449 F.Supp. 18 (S.D.N.Y.1978), and *Migut v. Hyman-Michaels Co.,* 571 F.2d 352 (6th Cir.1978) (an indemnity action.)

In *Camiolo,* the plaintiff/longshoreman sued the time charterer in negligence. Indemnity was not involved. In granting summary judg-

ment to the time charterer, the district court quoted from *Fernandez,* an indemnity case: "When Clause 8 shifts responsibility of proper discharge to the charterer, that responsibility includes whatever damage results from improper discharge, whether to the cargo or to the personnel unloading it." 449 F.Supp. at 19. The Court ruled that: "This court can find no intent between the parties for the charterer to take on the responsibility to maintain ETHA's decks during the stevedoring operations contemplated by Clause 8. Since the accident had nothing to do with proper or improper discharge of cargo, the *Fernandez rationale* is inapposite." 449 F.Supp. at 20. (Emphasis added).

In this case, appellant's counsel similarly argues that the trial court erred in determining which party bore *ultimate* responsibility for Hayes's injuries.

On a different tack, in *Scholl v. Chuang Hui Marine Co., Ltd.,* 646 F.Supp. 137, 139 (D.Conn. 1986), a common law negligence action brought by a petroleum inspector, the court, citing *Fernandez,* stated: "Where a charter-party provided that the costs of cargo handling were to be borne by the time charterer, the time charterer was liable to the owner for an injury directly related to the loading or discharging of cargo, but operational responsibility was not transferred from the owner to the charterer."

3. For an excellent discussion of this subject, see Judge VanArtsdalen's opinion in *Dougherty v. Navigazione San Paolo,* 622 F.Supp. 1, 5 (D.C.Pa. 1984).

must be recognized that *Fernandez* is an indemnity case. The opening paragraph in the *Fernandez* opinion is this: "The issues raised on this admiralty appeal stem not from the injured longshoreman's quest for damages, but from the subsequent contest among four other parties to shift the burden of indemnification for his recovery." 542 F.2d at 148. The Court held: "Since the cause of the damage, improper discharge of cargo, is within the scope of responsibility shifted from Shipowner to Time Charterer by Clause 8, the time charterer is obligated *to indemnify the shipowner.*"[4] 542 F.2d at 152–3. (Emphasis added).

Perhaps the confusion results from recitation of the time honored principle that "a time charterer who has no control *over a vessel* assumes no liability for negligence of the crew or unseaworthiness of the vessel absent an agreement to the contrary," followed by the language, "Clause 8 *shifts responsibility* for cargo operations to the time charterer."

The rule regarding control of the vessel in a time charter-party is as old as time charters themselves. Of course, the vessel is not demised in a time charter. The time charterer has no property interest in the vessel. When Clause 8 shifts responsibility for cargo operations from the shipowner to the time charterer, it transfers to the time charterer, as between the contracting parties, the shipowner's historical responsibility to load, stow, trim and discharge the cargo transported in the owner's vessel—but it does not itself provide an independent basis for a personal injury claim by a longshoreman against a time charterer.

That is not to say that Clause 8 is irrelevant in such a case, however. As the main opinion recognizes, deference may be due Clause 8 in a personal injury claim brought by a longshoreman, because it may well be a pivotal factor on the issue of whether the

master and the crew were acting as agents of the shipowner or the time charterer when their negligence injured the longshoreman. That is the only relevance of Clause 8 in such an action, however, and the issues in such an action remain the traditional ones, whether Clause 8 exists or not: 1) was the time charterer (itself, or through its agents) negligent; 2) if so, was that negligence a proximate cause of injury to the plaintiff; and 3) if so, what is the extent of the plaintiff's damages.

### THE SUMMARY JUDGMENT

I agree that the factual presentation filed by plaintiffs in opposition to defendant's motion for summary judgment raised no substantial issue of fact on the question of the captain's agency relationship to the time charterer. Neither, as the main opinion recognizes, did Clause 8. It is undisputed that the hydraulic fluid was on the deck of the ship several hours before the longshoremen arrived. For generations, it has been the shipowner's responsibility under the law to supply a ship in suitable condition for unloading operations.[5] I do not anticipate that in delineating the duty owed by the time charterer to the longshoremen the courts will decide that the time charterer's duty includes supplying a ship in suitable condition for unloading operations to begin. Neither do I anticipate that, Clause 8 notwithstanding, the courts will conclude that the ship's captain acts as the time charterer's agent when fulfilling his own duty to supply a ship in suitable condition. I therefore concur in the result reached.

### FOOTNOTE ONE OF THE MAIN OPINION

#### *D/S OVE SKOU, FERNANDEZ,* and *ULTIMATE* LIABILITY

Having relied upon *Fernandez v. Chios Shipping Co., Ltd., supra,* as a fundamen-

---

4. Judge Friendly, writing for the Court in *Thyssen, Inc. v. S.S. Fortune Star,* 777 F.2d 57, 67–8 (2d Cir.1985), explained that *Fernandez* found Clause 8 sufficient "to shift, *as between time charterer and shipowner,* primary responsibility for personal injury arising out of unloading operations, even though not caused by time charterer's own fault." (Emphasis added).

5. In *Scindia, supra* note 1, the Supreme Court repeated in detail the duty owed by the shipowner to the stevedore and his longshoremen prior to the commencement of cargo operations.

tal basis for its reasoning, the main opinion finds, "Clause 8 shifts responsibility for cargo operation to Nissan." [6] Then, in footnote one, the main opinion expresses concern over the following language found in footnote 5 in *Mallard v. Aluminum Co. of Canada, Ltd.*, 634 F.2d 236, 242 n. 5 (5th Cir.1981), *cert. denied*, 454 U.S. 816, 102 S.Ct. 93, 70 L.Ed.2d 85 (1981):

> In light of *Skou*, this circuit seems reluctant to find any shift of operational responsibility for personal injuries to the time charterer absent clear language to that effect. Thus, the second clause enumerated may impose on the charterer the financial responsibility for providing dunnage of the necessary quality without placing upon him the obligation to pay damages for personal injury that the dunnage may cause."

634 F.2d at 242 n. 5.

I believe the concern is misplaced, and I believe it (like the confusion addressed in the first part of this opinion) results from the failure to distinguish between indemnity claims brought by shipowners against time charterers and personal injury negligence claims brought by longshoremen. In addition, both *Fernandez* and *D/S Ove Skou* involved indemnity claims (shipowner v. time charterer) which arose from successful *unseaworthiness* claims brought by longshoremen against shipowners. Both cases therefore present a considerably different context from the one presented by this case, and it is doubtful their focus upon Clause 8—which is essentially a specification of the party (owner or charterer) upon whom *ultimate* responsibility rests for the activities enumerated in the clause—will have substantial bearing upon the different issues arising in the dissimilar context presented here.

Examination of the historical background of the two cases may be helpful. The historic rule, long recognized in America and England and often expressed in case law, is that absent special provision or special circumstance it is the shipowner's responsibility to load, stow, trim, and discharge the cargo transported in the owner's vessel. This rule is reiterated in *Nichimen Company v. M/V Farland, supra,* a contract indemnity case arising out of cargo damage, in which the court states: "[A]bsent any special provision in the charter or special circumstances, the duty to load, stow and discharge cargo—and the consequences for failing to do so properly, fell upon the ship and her owner." 462 F.2d at 330, *citing Munson S.S. Line v. Glasgow Nav. Co.*, 235 F. 64 (2d Cir.1916), *cert. denied*, 243 U.S. 643, 37 S.Ct. 405, 61 L.Ed. 919 (1917), *appeal dismissed*, 246 U.S. 647, 38 S.Ct. 315, 62 L.Ed. 919 (1918). Chief Judge Friendly, writing for the *Nichimen* Court, cited to *The Kaupanger*, 241 F. 702, 704 (S.D.N.Y.1917), and observed that Judge Learned Hand, while on the district court, explained that "the ship's and her owners', 'duty depends only upon the presumption from the original custom, when the ship's crew stowed and discharged; it may, of course, devolve upon the charterer by his assuming it ...,'." 462 F.2d at 330-1.

When ships were small, the shipowner through his crew unloaded the cargo from the vessel. As ships grew larger and cargoes heavier, it was not expedient for the crew to load and discharge the cargo, and stevedores appeared on the scene to undertake that task. Because it was hoped that both the shipowner and time charterer would benefit from the vessel's earnings, the parties apportioned the responsibilities to the cargo by special agreements. Those agreements evolved, in part, into Clause 8. As to how the responsibilities were divided, we look to the often quoted passage from *The Santona*, 152 F. 516, 518 (S.D.N.Y. 1907): "The ship is the owner's ship and the master and crew his servants for all details in navigation and care of the vessel; but for all matters relating to the receipt and delivery of cargo, and to those earnings of the vessel which flow into the pockets of the charterers, the master and crew are the servants of the charterer." That passage came from the Queen's Bench in

---

**6.** I agree that Clause 8 shifts responsibility for cargo operations to Nissan—as between the shipowner and the time charterer in their division of responsibilities during their venture.

1892, so the division of responsibilities to the cargo is not new. *See, e.g., Baumvol v. Furness*, 1 Q.B. (1892) 258, A.C. (1893) 8.

Indemnity claims brought by shipowners against charterers usually were claims to recover indemnity for claims paid to cargo interests. In determining whether the shipowner or the time charterer bore the *ultimate responsibility* for damages incurred as a result of lost or damaged cargo, the question was, "Which one of the parties agreed to carry out the responsibility involved?" If the cargo damage or loss was one which involved loading, stowing, trimming and discharging the cargo, the charterer was liable in indemnity to the shipowner for the charterer's misperformance.[7] *Oxford Paper Co. v. The Nidarholm*, 282 U.S. 681, 51 S.Ct. 266, 75 L.Ed 614 (1931).

A considerably different question was presented in an indemnity claim between shipowner and time charterer in a case arising out of personal injury to a longshoreman. The question was: "Who assumed responsibility and control over the loading and discharging operations?" It is control over the loading and discharging operations that gives rise to a duty owed to a longshoreman. Complicating matters was the fact that a longshoreman's *unsea-*

*worthiness* claim was a species of liability without fault,[8] often predicated upon the conduct of the stevedore. In addition, the stevedore was required to indemnify the shipowner for the breach of the stevedore's warranty of workmanlike performance, which is a species of contractual indemnification. Negligence principles were therefore generally irrelevant in such cases, and attempts made to hold time charterers liable on a stevedore's implied warranty of workmanlike service were generally unsuccessful. *See*, R. Bauer, *Responsibilities of Owner and Charterer to Third Parties—Consequences Under Time and Voyage Charters*, 49 Tul.L.Rev. 995, 1014 (1975).

It is against this background that both *D/S Ove Skou* and *Fernandez* must be read. The *D/S Ove Skou* Court held that the time charterer was not required to indemnify the shipowner when the stevedoring companies breached their warranty of workmanlike performance and a longshoreman was injured. The Court wrote that by arranging and agreeing to pay for the services of the stevedoring companies, the time charterer did not *warrant* to the shipowner that the stevedoring companies would perform their function in a workmanlike fashion.[9] The Court held that the

7. An exception arose for cases in which the actions of the master and the crew in relationship to cargo handling are directed toward the safety and seaworthiness of the vessel. *Nichimen Company v. M/V Farland*, 462 F.2d 319 (2d Cir.1972); *Horn v. CIA de Navegacion Fruco, S.A.*, 404 F.2d 422 (5th Cir.1968) *cert. denied*, 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477 (1969); and *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359 (5th Cir.1979).

8. *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944). *Mahnich* established the warranty of seaworthiness to be an absolute nondelegable duty owed to longshoremen without regard to negligence. Since *Mahnich*, courts have found liability under the warranty of seaworthiness because of, among other things, presence of extraordinarily hostile seamen, the requiring of two men to do the work of four, and incompetent personnel.

9. Though not citing *Munson*, 235 F. 64 (2d Cir. 1916), the *D/S Ove Skou* Court followed the teachings of *Munson*, a case then considered to be the leading case in reference to whether the charterer or the shipowner was to be ultimately liable for personal injury damages sustained by

a longshoreman during unloading operations. *Munson* held that, absent contract or custom to the contrary, the duty of unloading falls upon the shipowner and remains there under the government time charter form then in use. The time charter in *Munson* required the charterer "to provide and pay for" the unloading, as distinguished from Clause 8 language, "Charterers are to load, stow ... the cargo at their expense." The *Munson* Court wrote: "This obligation to pay for the unloading does not make the unloading the duty of the charterer, but leaves the legal duty of loading and discharging upon the owner, just as the duty of navigation remained upon the owner, although it was being performed by a supercargo appointed and paid by the charterer." 235 F.2d at 68, *citing The Volund*, 181 F. 643, 104 C.C.A. 373. Apparently, the *D/S Ove Skou* Court did not consider the difference between the language in the charter in use in *Munson* and the language of Clause 8 to be of such significance as to relieve the shipowner, for indemnity purposes in personal injury actions, of the shipowner's historical responsibility to see to it that the cargo was properly loaded and discharged. Rather, the *D/S Ove Skou* Court held: "The typical clause ... speci-

parties to the contract (the time charter, including Clause 8) did not contemplate that the time charterer would indemnify the shipowner for damages arising from *personal injury* to a longshoreman occurring during the unloading operation. Indemnity was therefore disallowed on contract principles.

The Court went further, reasoning that stevedores were independent contractors; that Clause 8 did not give the time charterer *control*[10] over the cargo discharge operations; and that the time charterer was therefore not responsible to the shipowner or the longshoreman for acts of omission or commission by the stevedores. From the perspective of the *D/S Ove Skou* Court, control by the time charterer was an essential ingredient to indemnity recovery in a claim growing out of personal injury. Indemnity was therefore disallowed on tort principles as well. In short, what the *D/S Ove Skou* Court said is that the charterer did not contract in Clause 8 to indemnify the shipowner when a longshoreman has prevailed against the shipowner on a personal injury unseaworthiness claim. It did not repudiate the long recognized division of responsibilities—as between shipowner and charterer—to the cargo, as expressed in *The Santona.*

*Fernandez* also involved an indemnity claim arising out of a longshoreman's personal injury recovery based on a claim against the ship for unseaworthiness.[11] Counsel for the time charterer argued that tort indemnity principles should be applied in the indemnity claim, but the Court could find no convincing basis to limit *Nichimen*

to cargo damage situations. The Court wrote: "When Clause 8 shifts the responsibility of proper discharge of cargo to the charterer, that responsibility includes whatever damages result from improper discharge, whether to the cargo or to the personnel unloading it." *Fernandez,* 542 F.2d at 152.

Contrary to *D/S Ove Skou,* the *Fernandez* Court held that the time charterer was obliged *by virtue of the charter itself* to indemnify the shipowner whether or not the time charterer was negligent:

[T]he Stevedore hired by the Time Charterer was found to have breached its warranty of workmanlike performance by failing properly to supervise and provide for the safety of its employees during unloading operations. Since the cause of the damage, improper discharge of cargo, is within the scope of responsibilities shifted from Shipowner to Time Charterer by Clause 8, the Time Charterer is obligated to indemnify the Shipowner.

542 F.2d at 152–3.

In effect, the *Fernandez* Court concluded that the parties to the contract (the time charter, including Clause 8) contemplated that the time charterer would indemnify the shipowner for damages arising from personal injury incurred by a longshoreman during the unloading operation. Thus *Fernandez* extended *Nichimen,* a cargo damage indemnity case, by allowing *contractual* indemnification in a claim growing out of personal injury unseaworthiness recovery. Tort indemnity principles were

---

fying that the captain shall be under the orders of the Charterers 'as regards employment and agency' and that 'charterers are to load, stow and trim the cargo' does not give to the Time Charterer any operational control over these activities." 365 F.2d at 351. The Court reasoned that although the charterer was to secure and pay for the loading and discharging of the cargo, the loading and discharging did not become a function for which the time charterer had operational responsibility unless the time charterer actually conducted the operations.

**10.** The Congress has left to the courts the responsibility to design and delineate the duty owed by time charterers to longshoremen. We know from legislative history and from footnote

one in Justices Powell and Rehnquist's concurring opinion in *Scindia* that it was the plain intent of Congress to impose the primary responsibility on the stevedore rather than the shipowner. I believe it would not be reasonable to anticipate that in delineating the duty owed by a time charterer to a longshoreman, the courts will place upon the time charterer the primary responsibility to control the stevedores' operations, thus removing that responsibility from the party in best position to prevent injuries.

**11.** It is obvious that longshoreman Fernandez filed his unseaworthiness claim and the jury returned its verdict before the 1972 amendments to the Act.

simply not discussed by the *Fernandez* Court. The case therefore contains no rulings upon the respective obligations of shipowners and time charterers in the context of a negligence action brought by a longshoreman.

In 1972 Congress eliminated longshoremen's unseaworthiness claims against shipowners. Therefore, the principal holding of *Fernandez*, so often quoted in longshoremen's personal injury negligence claims during the development of the law since 1972, is no longer viable. Something is amiss when a contractual *indemnity* case, resulting from a successful *unseaworthiness* claim by an injured longshoreman, is the most often cited case in longshoremen's negligence actions—and since the principal holding in *Fernandez* has passed away, I think it is time that its ghost be put to rest as well.

In 1972 Congress left to the federal courts the fashioning of a uniform law of negligence based not upon the doctrine of unseaworthiness but by analogy to common law tort principles. *See,* Report of the House Education and Labor Committee, H.R.Rep. No. 1441, 92d Cong., 2d Sess., 1972 U.S.Code Cong. & Adm.News pp. 4698, 4704; *Munoz v. Flota Grancolombiana, S.A.,* 553 F.2d 837, 840 (2d Cir.1977). For those interested in indemnity between shipowner and time charterer, I think it is reasonable to anticipate that indemnity matters, when arising from negligent personal injury to longshoremen (as distinguished from cargo damage) will likewise be decided consistent with common law tort indemnity principles. I do not anticipate that the time charter will be construed in such a way as to hold that indemnification questions in a negligence case will be determined purely upon the division of functions prescribed in the charter, that the parties to the time charter agreed that a non-negligent party would indemnify a negligent party for the negligent party's fault.

Concentrating now on the longshoreman's direct complaint in negligence against the time charterer, and considering for negligence purposes (and agency questions) the continued viability of the *D/S Ove Skou* Court's interpretation of Clause 8, we look to *Nitram Inc. v. Cretan Life,* 599 F.2d 1359 (5th Cir.1979).[12] *Nitram* is a cargo damage case upholding an indemnity award in favor of the shipowner and against the time charterer. *Nitram* held that responsibility for decisions made by the master which related to the safety of the cargo, rather than the safety of the vessel, lies at the feet of the charterer. The Court explained:

> The test to be employed in determining whether the charterer or the shipowner is to be held responsible for the Master's decisions regarding stowage was set forth by this Court in *Horn v. CIA de Navegacion Fruco,* 404 F.2d 422 (5th Cir.1968) *cert. denied,* 394 U.S. 943, 89 S.Ct. 1272, 22 L.Ed.2d 477 (1969). In construing Clause 8, we held:
>
> > The Captain occupies a dual role with regard to such decisions. He acts for the shipowner where his stowage decisions are made with regard to the seaworthiness and safety of the vessel; he acts for the cargo owner where his decisions do not affect the seaworthiness or safety of the vessel, but affect the safety of the cargo only.

599 F.2d at 1366.

In *Nichiman,* which the *Nitram* Court cited with approval, Chief Judge Friendly reminds us that under Clause 8 the captain may be acting on behalf of either the owner or the charterer when he actively intervenes in the cargo handling process; whether in any particular case he acts on behalf of the owner or the charterer must be determined by looking to the purpose for which he acts. When Clause 8 plays a part in the determination of an agency question, the conduct of the captain will be examined in determining the purpose for which he acts and for whose benefit he acts, because conduct is under examination in a negligence case. In negligence actions brought against time charterers, the finders of fact will be concerned with whether

---

**12.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. en banc 1981), this Court adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

the charterer (or its agents) exercised reasonable care under the circumstances—not simply how the charter reads. Thus, Judge Friendly's reminder, reiterated in *Nitram,* is applicable to agency questions in a personal injury negligence case as well as in a cargo damage case.[13]

The main opinion opines at footnote one that the 1972 amendments to the act undercut the rationale of *D/S Ove Skou.* As I have attempted to demonstrate, however, it was not the 1972 amendments to the Act which undercut *D/S Ove Skou,* save to the extent that the amendments did away with unseaworthiness claims. The statutory scheme established by the Act does not affect the interpretation of Clause 8, a time charter provision in existence long before the 1972 amendments. Further, for the reasons I have expressed, if the Eleventh Circuit has "adopted *an interpretation of Clause 8* ... which is inconsistent with that of the courts *which hold a time charterer liable* for cargo related personal injuries," the interpretation should no longer be of concern. (Emphasis added). And, finally, I suspect that the *Mallard* Court reversed the grant of summary judgment for the time charterer because a longshoreman may be able to recover in a negligence action without resorting to any provision in the time charter.

Although the main opinion in footnote one, and *Mallard* in footnote five, court the idea that it is Clause 8 that holds a time charterer liable to a longshoreman for "cargo related" personal injuries, they do not embrace it. Though that misplaced concept is proliferating, no appellate court has directly contributed to the proliferation. In my judgment, the district courts that have determined that *Clause 8* "shifts the responsibility" for negligent personal injury to a longshoreman from the shipowner to the time charterer are wrong. Clause 8 divides *between the parties to the charter* the responsibilities arising during the shipping venture; it does not determine which of the parties will be liable to a longshoreman, except to the extent that it bears

upon agency questions presented in any given case.

Although the concerns I have expressed above are academic to the result in this particular case, they are not academic to the logical development of the law in cases like this one. Proliferation of the misconceptions addressed above can have significant practical consequences to the disadvantage of the bar and the public. I therefore suggest that continued reliance upon *Fernandez* and continued concern over *D/S Ove Skou* can add nothing but confusion to the development of the law in cases such as this one, and that it would be best if the law were allowed to develop in this area without reference to them.

---

**13.** For those concerned with *D/S Ove Skou*'s interpretation of Clause 8, it is significant that

*Nitram* cited not only *Nichimen,* but also cited *Fernandez* with approval.